J-S37016-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: E.C. a/k/a B.B.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: C.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1039 EDA 2023 |

Appeal from the Order Entered March 23, 2023
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No: CP-51-DP-0001166-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: E.C. a/k/a B.B.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: C.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1040 EDA 2023 |

Appeal from the Decree Entered March 23, 2023
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-AP-0000089-2023

BEFORE: BENDER, P.J.E., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED DECEMBER 8, 2023**

C.C. ("Mother") appeals from the decree involuntarily terminating her

parent rights to her son, E.C. a/k/a B.B.C. ("Child"), born in October 2020.[1]

---

[1] On the same date, by separate decree, the court terminated the parental rights of any unknown father with respect to Child. No purported father participated in the lower court proceedings, filed an appeal, or participated in the instant appeals.

Mother also appeals from the order changing Child's permanency goal from reunification to adoption. Upon review, we affirm the termination decree and dismiss the appeal from the goal change order as moot.

The factual and procedural history of this case is as follows. In October 2020, the Philadelphia Department of Human Services ("DHS") learned through a general protective services report that Mother and Child tested positive for fentanyl and cocaine at Child's birth. *See* N.T., 3/23/23, at 45. Due to withdrawal symptoms, Child remained in the neonatal intensive care unit until October 30, 2020. *See id*. Upon discharge, DHS obtained an order of protective custody. *See id*. Following a shelter care hearing on November 2, 2020, Child remained in the care and custody of DHS. Thereafter, the court adjudicated Child dependent on December 15, 2020. *See id*. at 45-46.

In furtherance of Child's permanency goal of reunification, Mother was required to complete the following goals: (1) attend weekly supervised visitation with Child; (2) participate in a drug and alcohol program and a mental health program; (3) submit to random drug screens at the Clinical Evaluation Unit ("CEU"); (4) participate in Achieving Reunification Center ("ARC") services, including parenting classes; (5) locate suitable housing; and (6) sign all releases. *See id*. at 46. Mother was informed of her objectives. *See id*. Mother's objectives largely remained the same throughout the duration of Child's dependency in which the trial court conducted regular permanency review hearings. *See id*. at 46-47.

Aside from completing a parenting course through ARC in April 2021, Mother failed to accomplish these objectives. *See id*. at 63. Mother attended most weekly visits with Child, but she consistently arrived forty-five to fifty-five minutes late to the hour-long visits. *See id*. at 49. As a result, in July 2022, the court reduced Mother's visitation schedule to once every two weeks. *See id*. at 49-50. However, even after the change, Mother continued to arrive forty-five to fifty-five minutes late. *See id*. at 50. Further, Mother failed to engage in any alcohol, drug, or mental health treatment. *See id*. at 47. Mother also never submitted to an assessment or random drug screen at CEU. *See id*. at 48-49. Finally, DHS referred Mother to ARC to aid in her search for suitable housing. *See id*. at 66. However, ARC discharged her on three separate occasions because Mother failed to engage with the service. *See id*.

On March 6, 2023, DHS filed a petition seeking the involuntary termination of Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b), and a separate petition to change Child's permanency goal from reunification to adoption. The trial court conducted an evidentiary hearing on March 23, 2023, when Child was approximately two-and-a-half years old, wherein he was represented by a guardian *ad litem* ("GAL").[2]

---

[2] Insofar as Child was two years old at the time of these proceedings and incapable of articulating a well-settled preference with respect to termination, we determine that Child's right to legal counsel pursuant to section 2313(a) is satisfied. *See In re T.S.*, 192 A.3d 1080, 1092-93 (Pa. 2018) (holding that if a child is "too young to be able to express a preference as to the outcome
*(Footnote Continued Next Page)*

Mother was represented by counsel and testified on her own behalf *via* telephone. DHS presented the testimony of CUA case manager Destiny Vargas ("Ms. Vargas").

Ms. Vargas testified that Child was adjudicated dependent because Mother and Child tested positive for fentanyl and cocaine at Child's birth. **See** N.T., 3/23/23, at 45. DHS provided Mother with objectives, but Ms. Vargas testified that Mother only successfully completed one, a parenting class through ARC. **See id**. at 63. On direct examination, Ms. Vargas testified to Mother's failures, as follows:

> **Q:** And is Mother engaged in any drug and alcohol treatment at this time?
>
> **A:** No. ...
>
> **Q:** Is Mother engaged in any mental health treatment at this time?
>
> **A:** No.
>
> * * * *
>
> **Q:** And at each permanency review hearing, was Mother referred to the CEU for a forthwith, randoms [sic], and an assessment?
>
> **A:** That's correct.
>
> **Q:** Has Mother attended any of the -- has Mother attended a CEU assessment?

---

of the proceedings," there is no conflict between a child's legal and best interests, and a child's section 2313(a) right to counsel is satisfied by an attorney serving as GAL who represents the attorney-GAL's view of the child's best interests); **see also** 23 Pa.C.S.A. § 2313(a).

**A:** The last -- she attend[ed] -- she went to the CEU on 10/13[/22]; however, she refused to give a screen and left.

**Q:** And other than the 10/13/[]22, has she had any other screens through the CEU?

**A:** No.

***Id***. at 47-49.[3]

Ms. Vargas additionally testified that Child never resided with Mother, and, during Child's dependency Mother did not spend enough time with Child to establish a parent-child bond due to her tardiness. ***See id***. at 51-52. Moreover, Ms. Vargas testified that Child has a parent-child bond with the foster parent, as follows:

**Q:** And have you observed [Child's] relationship with the resource parent?

**A:** Yes.

**Q:** And what does their interaction look like?

**A:** He looks to her as his mother.

**Q:** And does the resource parent meet all of his needs?

**A:** Yes.

**Q:** And who does [Child] look to for love, protection, and support?

**A:** The foster parent.

---

[3] Mother testified that she no longer used illegal substances. ***See*** N.T., 3/23/23, at 79-80. Ms. Vargas and Mother also testified that Mother had reported to Ms. Vargas that she (Mother) had attended therapy, but there is no evidence of record to substantiate that Mother had actually received treatment. ***See id***. at 47, 56, 82-84.

**Q:** And is this a preadoptive home?

**A:** Yes.

**Q:** And do you believe that [Child] would suffer irreparable harm if Mother's rights were terminated today?

**A:** No.

*Id*. at 53.

By decree dated and entered on March 23, 2023, the trial court involuntarily terminated Mother's parental rights pursuant to section 2511(a)(1), (5), (8), and (b). ***See***, ***e.g.***, N.T., 3/23/23, at 113.[4] In addition, by order entered the same date, the court changed Child's permanency goal to adoption. Both Mother and the trial court complied with Pa.R.A.P. 1925.[5]

On appeal, Mother presents the following issues for review:

1. Whether the trial court committed error by involuntarily terminating [Mother's] parental rights to [Child], where such determination was not supported by clear and convincing evidence establishing grounds for termination under the Adoption Act, 23 Pa.C.S.A. §§ 2511(a)(1), (a)(2), (a)(5)[,] and (a)(8)?

2. Whether the trial court committed error by involuntarily terminating [Mother's] parental rights where such ruling did not give primary consideration to the developmental, physical, and emotional needs and welfare of [Child] as required by the Adoption Act, 23 Pa.C.S.A. § 2511(b)?

---

[4] We note that at the hearing, the trial court terminated pursuant to only section 2511(a)(5) and (8), but in the subsequent decree, the trial court added section 2511(a)(1) as a grounds for termination. ***Compare*** N.T., 3/23/23, at 113 ***with*** Decree, 3/23/23. This discrepancy does not affect our analysis.

[5] This Court *sua sponte* consolidated Mother's appeals from the termination decree and goal change order. ***See*** Order, 6/14/23.

3. Whether the trial court committed error by changing [Child's] permanency goal from reunification with the parent(s) to adoption?

Mother's Brief at 5.

Our standard of review is as follows:

[I]n cases involving involuntary termination of parental rights[, our review] is limited to determining whether the trial court's determination is supported by competent evidence. When applying this standard of review, an appellate court must accept the findings of fact and credibility determinations of the trial court if they are supported by evidence of record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion. An abuse of discretion is found where there is a demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will. It matters not that an appellate court might have reached a different conclusion, as it is well-established that absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand.

*In re Adoption of L.A.K.*, 265 A.3d 580, 591 (Pa. 2021) (internal citations omitted).

Pennsylvania's Adoption Act ("the Act") governs involuntary termination of parental rights proceedings. *See* 23 Pa.C.S.A. §§ 2101-2938. Subsection 2511(a) provides grounds for the involuntary termination of parental rights. If the trial court finds clear and convincing evidence supporting the existence of one of the grounds for termination set forth in subsection (a), the court must then consider whether termination would best serve the child under subsection (b). *See id*. § 2511(b). This Court need only agree with one of

the grounds set forth in subsection (a) to affirm, provided subsection (b) is also satisfied. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004).

Here, the trial court involuntarily terminated Mother's parental rights to Child pursuant to section 2511(a)(1), (5), (8), and (b). As we need only agree with the trial court's determination as to any one section of 2511(a), we limit our discussion to sections 2511(a)(8) and (b), which provide as follows:

> **(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * * *
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
>
> * * * *
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(8), (b).

In her first issue, Mother argues the trial court erred in finding grounds for termination of her parental rights pursuant to section 2511(a)(8). In order to satisfy section 2511(a)(8), the petitioner must prove that: (1) the child has been removed from the parent's care for at least twelve months; (2) the conditions which led to the removal or placement still exist; and (3) termination of parental rights would best serve the needs and welfare of the child. *See In re Adoption of J.N.M.*, 177 A.3d 937, 943 (Pa. Super. 2018). Furthermore, termination pursuant to section 2511(a)(8) does not require an evaluation of a parent's willingness or ability to remedy the conditions that led to the removal or placement of the child. *See In re M.A.B.*, 166 A.3d 434, 446 (Pa. Super. 2017). Rather, our inquiry is focused upon whether the at-issue "conditions" have been "remedied" such that "reunification of parent and child is imminent at the time of the hearing." *In re I.J.*, 972 A.2d 5, 11 (Pa. Super. 2009).

> Finally, this Court has explained that,

> while both [s]ection 2511(a)(8) and [s]ection 2511(b) direct us to evaluate the "needs and welfare of the child," we are required to resolve the analysis relative to [s]ection 2511(a)(8)[] prior to addressing the "needs and welfare" of [the child], as pr[e]scribed by [s]ection 2511(b); as such, they are distinct in that we must address [s]ection 2511(a) before reaching [s]ection 2511(b).

*In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*).

Regarding section 2511(a)(8), Mother, without citing to any legal precedent, asserts that Child was not removed from her care because he was placed directly into foster care upon his discharge from the hospital. *See*

Mother's Brief at 26.  As such, she contends that there was no evidence of neglect, abuse, inability, or abandonment of Child.  ***See id***. at 27.  Mother also generally asserts that the trial court erred in terminating her parental rights because DHS failed to offer reasonable services and assistance for her to achieve reunification.  ***See id***. at 21-23.

Instantly, in determining that DHS satisfied section 2511(a)(8), the court stated the following:

> This [c]ourt found that Ms. Vargas'[s] testimony was credible regarding Mother and her single case plan objectives. This [c]ourt found that Mother did not remedy any of the conditions which led to the removal of [Child].  The testimony offered by Mother proved to the trial court that the conditions which brought [Child] into care had not been remedied.  Mother was notified of her single case plan objectives in January of 2021. Mother did not comply with any of her single case plan objectives. The primary objective was drug and alcohol treatment given that [Child] and Mother tested positive for fentanyl and cocaine at [Child's] birth.  There has not been any proof of drug or alcohol treatment for Mother throughout the life of the case.  Mother has not attended any randoms [sic] or drug screens whatsoever in the entire life of this case.  Another single case plan objective was mental health treatment and there was no proof offered of mental health treatment for Mother.  There was some testimony from Ms. Vargas that Mother told her she was attending therapy . . ., but Ms. Vargas did not have any record of that treatment.  Mother testified this was because [the provider] had her under the wrong name[,] but Mother did not provide proof to support this assertion. Mother has also not obtained suitable housing for herself and [Child].  Mother's visitation with [Child, initially,] was . . . weekly one hours visits but the testimony from Ms. Vargas was that throughout the life of the case, Mother was consistently 45-55 minutes late for the visits, giving her very little time with [Child]. As a result of this lateness, the visits were switched to bi[-]weekly hour visits and still Mother would show up very late to the visits. Mother gave both Ms. Vargas and the [c]ourt reasons for why she was always late but the [c]ourt did not find them credible.  In fact, the [c]ourt found that Mother arriving over an hour and a half late

for the termination hearing was further supportive evidence of Mother attending the visits late without valid reasons. Based on all these reasons, the [c]ourt found that DHS met its burden by clear and convincing evidence to terminate Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)[(8)] . . ..

Trial Court Opinion, 6/7/23, at 15-16 (internal citation omitted).

Following our review, we discern no abuse of discretion or error of law by the trial court. It is undisputed that Child, at the time of the termination hearing, was in DHS's care for more than two years, far in excess of the statutory minimum. Concerning the second factor, Mother's lack of compliance with her objectives, especially the objectives tailored towards achieving sobriety, supports the trial court's conclusion that the conditions which led to Child's removal still exist. Lastly, regarding the third section 2511(a)(8) factor, the trial court heard sufficient testimony that termination of Mother's parental rights would best serve the needs and welfare of Child for the following reasons: Child has never resided with Mother as he was placed in the care of DHS following his discharge from the hospital. **See** N.T., 3/23/23, at 45. Further, although Mother attended visitation, she consistently arrived forty-five to fifty-five minutes late, and her tardiness caused her visitation time to be reduced by half. **See id**. at 49-50. Ms. Vargas testified that Mother's habitual tardiness prevented her from achieving a parent-child bond with Child. **See id**. at 51-52. In contrast, the record demonstrates a parent-child bond between foster parent and Child. **See id**. at 53-54. Foster parent is a pre-adoptive resource that meets all of Child's needs. **See id**.

Based on the foregoing testimony, the trial court was well within its discretion to terminate Mother's parental rights under section 2511(a)(8) because Child had been removed from Mother's care in excess of the twelve-month statutory minimum; the conditions which led to Child's removal continue to exist; and termination would best serve the needs and welfare of Child. *See In re Adoption of J.N.M.*, 177 A.3d at 943.

With respect to Mother's argument that Child was not removed from her care because he was removed upon his discharge from the hospital, she does not cite to any controlling law, and we are not aware of any that states this proposition. Indeed, Mother's assertion is contrary to precedent from our Supreme Court. *See In re Adoption of J.J.*, 515 A.2d 883, 889-90 (Pa. 1986) (affirming termination pursuant to section 2511(a)(5), which includes the same language as section 2511(a)(8) regarding removal of a child, where the child had been under the care of the agency since his birth and where the father had "never had custody of, nor provided support for, [the] child").

To the extent Mother argues that DHS's burden during the termination hearing included proving reasonable efforts by DHS, we find her argument to be waived for failure to provide a discussion with citation to the relevant law and develop the issues in a manner allowing for meaningful review. *See In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011) (noting that "[w]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion

capable of review, that claim is waived") (internal quotations omitted) (citing, *inter alia*, Pa.R.A.P. 2119(a)).[6]

Mother next argues the trial court erred in finding that termination was in the best interests of Child pursuant to section 2511(b). Section 2511(b) affords primary consideration to the developmental, physical and emotional needs and welfare of the child. **See T.S.M.**, 71 A.3d at 267. "Notably, courts should consider the matter from the child's perspective, placing [their] developmental, physical, and emotional needs and welfare above concerns for the parent." **In the Interest of K.T.**, 296 A.3d 1085, 1105 (Pa. 2023). This determination "should not be applied mechanically," but "must be made on a case-by-case basis," wherein "the court must determine each child's specific needs." **Id**. at 1106. Accordingly, there is no "exhaustive list" of factors that must be considered in this context. **Id**. at 1113 n.28.

Regarding the section 2511(b) best interest analysis, this Court has explained:

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child. The mere existence of an emotional bond does not preclude the

---

[6] Even if this claim were not waived, we would deem it to be meritless. In **In the Interest of D.C.D.**, 105 A.3d 662 (Pa. 2014), our Supreme Court held that, with respect to section 2511 of the Adoption Act, "Neither subsection (a) nor (b) requires a court to consider the reasonable efforts provided to a parent prior to termination of parental rights." **Id**. at 672. Therefore, Mother's assertion that the court erred in terminating her parental rights because DHS failed to provide reasonable efforts is misplaced.

termination of parental rights. Rather, the [trial] court must examine the status of the bond to determine whether its termination would destroy an existing, necessary and beneficial relationship. . . ..

In addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, . . . the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (internal citations, quotations, brackets, and indentation omitted). Furthermore, our Supreme Court has stated that, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *In re T.S.M.*, 71 A.3d 251, 268 (Pa. 2013). In weighing the bond considerations pursuant to section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id*. at 269. Children "are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id*.

Our High Court recently explained:

Severance of a "necessary and beneficial" bond would predictably cause more than the "adverse" impact that, unfortunately, may occur whenever a bond is present. By contrast, severance of a necessary and beneficial relationship is the kind of loss that would predictably cause "extreme emotional consequences" or significant, irreparable harm.

***K.T.***, 296 A.3d at 1109-10 (internal citations omitted).  As such, the ***K.T.*** Court distinguished "extreme emotional consequences" from an "adverse impact" to the child when parental rights are terminated.  ***Id***. at 1111.  Specifically, the Court cautioned that a trial court "must not truncate its analysis and preclude severance based solely on evidence of an 'adverse' or 'detrimental' impact to the child." ***Id***. at 1114.  The Court concluded, "to grant termination when a parental bond exists, there must be clear and convincing evidence that the bond is not necessary and beneficial." ***Id***.

Moreover, in reiterating that the parental bond is only one part of the analysis, the ***K.T.*** Court held that the "[s]ection 2511(b) inquiry must also include consideration . . . [of] certain evidence if it is present in the record." ***Id***. at 1113, n.28 (emphasis omitted).  The Court recognized that "case law indicates that bond, plus permanency, stability and all 'intangible' factors may contribute equally to the determination of a child's specific developmental, physical, and emotional needs and welfare, and thus are all of 'primary' importance in the section 2511(b) analysis." ***Id***. at 1109.  For instance, if relevant in a case, a trial court "can equally emphasize the safety needs of the child" in its analysis under section 2511(b).  ***See In re M.M.***, 106 A.3d 114, 118 (Pa. Super. 2014).

Mother posits that the trial court erred in terminating her parental rights under section 2511(b) because DHS did not present any expert evidence to establish that Child would not experience significant detrimental harm if her

parental rights were terminated. *See* Mother's Brief at 28. Mother argues that the trial court inappropriately relied on the testimony of Ms. Vargas who was unqualified to establish whether Mother lacked a parental bond with Child. *See id*.

The trial court explained that the section 2511(b) best interests militated in favor of termination:

> The [c]ourt found credible all of the testimony from Ms. Vargas that there is a lack of a parent child bond between Mother and [Child]. Ms. Vargas provided the reasons for this as there was never any consistency in their visits and a bond could not have been formed given the [five to fifteen] minute visits that Mother had with [Child] throughout the life of the case. These short visits were due to Mother's chronic lateness. The [c]ourt also found credible all of the testimony from Ms. Vargas as to the bond between Child with the resource parent and that all of Child's needs are being met on a daily basis with the resource parent. [Child] has been in this foster care home since April of 2021 and it is preadoptive. The [c]ourt also heard testimony that [Child] would not suffer any irreparable harm if Mother's parental rights were terminated. This was based on the resource parent providing for [Child's] needs and the lack of involvement and bond with Mother.

Trial Court Opinion, 6/7/23, at 17.

Following our review, we conclude the trial court did not commit an error of law or abuse its discretion in finding that termination of Mother's parental rights was in Child's best interests. Initially, we hold that the trial court did not err in relying on the testimony of Ms. Vargas. *See In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (stating that "[w]hen conducting a bonding analysis, the court is not required to use expert testimony[; rather, s]ocial workers and caseworkers can offer evaluations as well") (internal citations

- 16 -

omitted). Additionally, Ms. Vargas's testimony, which the trial court could rely on, established that Mother had not formed a parent-child bond and that Child, instead, looks to his "resource parent," *i.e.*, his foster parent, who is a preadoptive resource, as a mother, and he looks to her for his needs, including, love, protection, and support. **See** N.T., 3/23/23, at 49-54. Ms. Vargas additionally opined that E.C. would not suffer irreparable harm if Mother's parental rights were terminated. **See id**. at 53. Thus, the trial court did not abuse its discretion in determining that termination best serves the Child's developmental, physical, and emotional needs and welfare pursuant to section 2511(b), and that termination of Mother's parental rights would not sever a "necessary and beneficial" relationship or cause "extreme emotional consequences." **See K.T.**, 296 A.3d at 1109-10.

Given our disposition affirming the decree terminating Mother's parental rights, her third issue regarding the trial court's decision to change Child's permanency goal from reunification to adoption is moot. **See Int. of A.M.**, 256 A.3d 1263, 1272-73 (Pa. Super. 2021) (finding issues regarding goal change moot in light of termination of parental rights); **see also In re Adoption of A.H.**, 247 A.3d 439, 446 (Pa. Super. 2021) (holding that "the effect of our decision to affirm the orphans' court's termination decree necessarily renders moot the dependency court's decision to change Child's goal to adoption"); **In re D.K.W.**, 415 A.2d 69, 73 (Pa. 1980) (stating that

once parental rights are terminated, issues of custody and dependency are moot). Therefore, we do not review this issue.

Based on the foregoing, we affirm the decree terminating Mother's parental rights to Child and dismiss as moot the order changing Child's permanency goal to adoption.

Decree affirmed. Appeal from goal change order dismissed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/8/2023