J-S25016-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.-D.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: G.T.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 666 EDA 2024 |

Appeal from the Order Entered February 29, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000565-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: K.-D.M.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: G.T.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 667 EDA 2024 |

Appeal from the Decree Entered February 29, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000209-2021

BEFORE:  DUBOW, J., McLAUGHLIN, J., and BECK, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED SEPTEMBER 4, 2024**

G.T.S. ("Father") appeals from the decree terminating his parental rights to K.-D.M.S. ("Child") and the order changing Child's goal to adoption. We affirm.

Child was born in November 2017. In August 2023,[1] DHS filed a petition to terminate Father's parental rights and an amended petition to change Child's goal to adoption. The trial court held a hearing.

Community Umbrella Agency ("CUA") case manager Stephanie Riley testified that Child was removed from the home in 2018 due to a GPS report of inadequate shelter, intellectual disabilities of parents, and substance abuse by A.M. ("Mother"). N.T., Feb. 5, 2024, at 7. At the time, Child was residing with Mother; Father was incarcerated. *Id.* Riley testified that Child was adjudicated dependent and removed from Mother's custody. *Id.* at 8. Riley stated that Father's single case plan objectives were to attend visitation; comply with the CUA's directions and the court's orders; participate with the Achieving Reunification Center ("ARC") for housing, parenting, and employment; and verify housing and income. *Id.* at 15. She confirmed that she had discussed the objectives with Father and that she referred him to the services necessary to complete the objectives. *Id.* at 15-16. Riley said that Father had been referred to ARC but ARC closed his case due to non-participation because he had declined parenting services and did not appear for housing and employment services. *Id.* at 16. She stated Father had not provided any documentation that he had appropriate housing or that he was employed. *Id.* at 16-17.

---

[1] DHS initially petitioned for termination in April 2021, naming G.**D**.S as the putative Father. G.D.S. was not the biological father of Child. Father is G.**T**.S. and his paternity was established through a DNA test.

Father was released from prison in March 2022. Riley testified that from his release from incarceration in May 2022 through December 2023, Father attended only 38 of the offered 93 visits with Child. *Id.* at 18. Riley testified that she did not recommend reunification with Father. *Id.*

Riley testified that Child was "generally indifferent if [Father's] visit [was] cancelled" and "usually seemed happy that she [did] not have to go." *Id.* at 19. She further testified Father was not involved in meeting Child's medical, educational, or emotional needs and did not ask about how Child was doing medically. *Id.* at 19-20. Riley testified that she had spoken to Child about Child's wishes, and Child would like to remain in the resource home. *Id.* at 20. She testified that she did not think terminating Father's parental rights would cause significant or irreparable harm to Child. *Id.* at 22.

Riley testified that Father had been notified of all single case plan meetings and that she had had a conversation with Father regarding the objectives. *Id.* at 26-27. She stated that the conversation she had with Father did not go well because "[F]ather became very verbally aggressive and disrespectful," and she had to exit the conversation. *Id.* at 28. She testified that she explained the objectives to him and that was what "led [him to] becoming angry." *Id.*

Riley testified that she believed she had referred Father to ARC again, after they had closed his case, but she did not have documentation for the second referral. *Id.* at 30-31. She further stated that Father had not been

invited to medical or educational appointments, but he had not asked about the appointments. *Id.* at 32-33.

Social worker Roya Paller testified that she spoke with Child to assess Child's understanding of the adoption process. N.T., Feb. 29, 2024, at 7-8. Roya stated Child was "an intelligent young girl." *Id.* at 8. She testified Child was aware of the adoption process, was very happy in the foster home, and knew that adoption would mean that the foster mother would be her mom and that visits with Father could cease. *Id.* Roya testified that Child wanted to remain with the foster mother, with whom she was very bonded. *Id.* at 9.

Father testified that his objectives were not clear to him because he had spoken with Riley only one time. N.T., Feb. 5, 2024, at 39. He acknowledged that he and Riley had a "little confrontation," but claimed it "wasn't like she said" and "[a]ll that was exaggerated." *Id.* at 40. He testified he lived with his sister and the house was appropriate for Child. *Id.* at 42. He testified that he missed visits with Child to comply with the requirements of his parole, including finding employment. *Id.* at 44. Father testified that when he visits Child, she "runs and jumps in [his] arm[s]," Child calls him, "Daddy," and Child sometimes cries when the visit concludes. *Id.* at 45-46. Father testified that he brings toys and snacks to every visit. *Id.* at 45.

In February 2024, the court changed Child's goal to adoption and in March 2024 it involuntarily terminated Father's parental rights under section

2511(a)(1), (2), (5), and (8) and 2511(b). Father filed timely notices of appeal.[2]

Father raises the following issues:

> 1. Whether the trial court erred and/or abused its discretion by changing the child's goal to adoption and terminating the parental rights of Father, G.T.S. pursuant to 23 Pa. C.S.A. section 2511(a)(1) where Father presented evidence that he made significant efforts to perform his parental duties.
>
> 2. Whether the trial court erred and/or abused its discretion by changing the child's goal to adoption and terminating the parental rights of Father, G.T.S. pursuant to 23 Pa. C.S.A. section 2511(a)(2) where Father presented evidence that he made significant efforts to remedy any incapacity or neglect.
>
> 3. Whether the trial court erred and/or abused its discretion by changing the child's goal to adoption and terminating the parental rights of Father, G.T.S. pursuant to 23 Pa. C.S.A. section 2511(b) where there was no testimony presented regarding the parental bond father and the child have.

Father's Br. at 8.

We review an order involuntarily terminating parental rights for an abuse of discretion. *In re G.M.S.*, 193 A.3d 395, 399 (Pa.Super. 2018). In termination cases, we "accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (quoting *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012)). "If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of

---

[2] In April 2024, this Court remanded this matter to the trial court for it to correct procedural errors in the record and to file a new Rule 1925(a) opinion.

discretion." ***In re Adoption of K.C.***, 199 A.3d 470, 473 (Pa.Super. 2018). We will reverse a termination order "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." ***In re Adoption of S.P.***, 47 A.3d at 826.

A party seeking to terminate parental rights has the burden of establishing grounds for termination by "clear and convincing evidence." ***In re Adoption of K.C.***, 199 A.3d at 473 (citation omitted). Clear and convincing evidence means evidence "that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." ***Id.*** (quoting ***In re Z.S.W.***, 946 A.2d 726, 728-29 (Pa.Super. 2008)).

Termination of parental rights is controlled by Section 2511 of the Adoption Act. ***In re L.M.***, 923 A.2d 505, 511 (Pa.Super. 2007). Under this provision, the trial court must engage in a bifurcated analysis prior to terminating parental rights:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

- 6 -

*Id.* (citations omitted). To affirm the termination of parental rights, this Court need only affirm the trial court's decision as to any one subsection of Section 2511(a). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004).

Father argues the trial court erred when it terminated his parental rights pursuant to Section 2511(a)(1) and (2).[3] Because only one basis for termination under Section 2511(a) is necessary, we will focus on the court's termination of Father's parental rights under Section 2511(a)(2), which states:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

Section 2511(a)(2) therefore requires the moving party to prove three factors by clear and convincing evidence: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or

---

[3] DHS concedes that Sections 2511(a)(5) and (8) do not apply because Child was not in Father's custody when she was removed from care. DHS's Br. at 17.

refusal cannot or will not be remedied." ***In re K.Z.S.***, 946 A.2d 753, 758 (Pa.Super. 2008) (citation omitted). "The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; those grounds may also include acts of refusal as well as incapacity to perform parental duties." ***Id.*** (citation omitted). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." ***Matter of Adoption of M.A.B.***, 166 A.3d 434, 443 (Pa.Super. 2017) (citation omitted).

For Section 2511(a)(2), Father argues that the evidence established he had remedied the conditions that caused Child to come into care because he attempted to comply with the goals set for him and maintained contact with Child. He contends there was no evidence of present incapacity. He argues he was incarcerated when he was identified as Child's biological father and claims that after his release he worked toward reunification by complying with goals and objectives. He argues he had appropriate housing and maintained visitation.

Here, the trial court concluded DHS established that Father exhibited a repeated and continued incapacity or refusal that has caused Child to be without parental care, control, or subsistence necessary for Child's physical or mental wellbeing and the conditions and causes of the incapacity, abuse, neglect, or refusal cannot or will not be remedied. It reasoned:

> [T]estimony from CUA workers was that Father has failed to achieve his case plan objectives. The testimony also illuminated that Father has consistently failed to make

attempts to remedy his case plan objectives after reminders and offers of support from CUA. Under these specific facts and circumstances, this Court found clear and convincing evidence that Father demonstrated a settled purpose of relinquishing parental claim to [Child]. Prior to the filing of the termination petition, [Child] ha[d] been in kinship care with a maternal aunt for nearly her entire life due to Mother and Father's inability and refusal to care for [Child]. Father's refusal to parent [Child] since the filing of the petition has been demonstrated by his repeated failures to complete his case plan objectives including consistently visiting with [Child], finding stable housing, and completing parenting, finance, and housing classes at ARC.

Trial Court Opinion, filed May 11, 2024, at 6-7 (internal citations omitted).

The record supports the court's findings of fact, and it did not abuse its discretion in finding termination proper under Section 2511(a)(2). Father has not consistently visited Child, has not completed parenting or other classes, and has not obtained either stable employment or appropriate housing. Such conduct exhibits an incapacity, neglect, or refusal to parent that has left Child without parental care, control, or subsistence necessary for her physical or mental wellbeing. It is sufficient to establish that the conditions and causes of the incapacity, neglect, or refusal cannot or will not be remedied.

Father next maintains the court erred when it found termination proper under Section 2511(b). He argues the testimony was that Father maintained consistent contact with Child and attended a majority of his visits, and that termination would be detrimental to Child because Child had a positive, parental bond with Father. He claims he had weekly visits with Child from April 2022 until the time of the hearing in February 2024. He points to his testimony that the visits had gone well and that Child jumped into his arms at every

visit. He notes his testimony that Child called him "Daddy," that he brought toys and snacks to every visit, and that Child cried when Father left. He claims that no witnesses at the hearing had observed Father with Child and therefore it was "impossible to assess the bond between Father and Child and whether termination of Father's parental rights would have a detrimental effect on Child." Father's Br. at 21. He argues DHS cannot meet its burden when it provided no evidence.

The focus under Section 2511(b) is not on the parent, but on the child. *In re Adoption of R.J.S.*, 901 A.2d 502, 508 (Pa.Super. 2006). Under Section 2511(b), the trial court must consider "the developmental, physical and emotional needs and welfare of the child" to determine if termination of parental rights is in the best interest of the child. *See* 23 Pa.C.S.A. § 2511(b). This inquiry involves the assessment of "[i]ntangibles such as love, comfort, security, and stability[.]" *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa.Super. 2005). The court must also examine the parent-child bond, "with utmost attention to the effect on the child of permanently severing that bond." *Id.* However, the "mere existence of an emotional bond does not preclude the termination of parental rights." *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011). Rather, the trial court must consider whether severing the bond "would destroy an existing, necessary and beneficial relationship." *Id.* (citation omitted). The court must also examine any pre-adoptive home and any bond between the child and the foster parents. *In re T.S.M.*, 71 A.3d at 268.

Here, the trial court concluded termination of Father's parental rights would best meet Child's needs, emphasizing the bond Child had with the resource parent:

> In the instant matter, there has been compelling testimony which illustrates that removing [Child] from the care of [Foster Mother] is not in [Child's] best interest due to [Child's] bond with [Foster Mother]. Pursuant to testimony from [Child's] CUA case manager, [Child] is well-bonded to [Foster Mother] and [Foster Mother] has expressed willingness to adopt [Child]. Additionally, the CUA case worker testified that [Child] looks for [Foster Mother] to meet the needs that a parent should provide. Furthermore, the CUA case manager testified that [Foster Mother] is supportive and compliant in achieving [Child's] academic, emotional, and health goals and plans. Finally, testimony . . . from the social worker assigned to Mother illuminated that [Child] is "very happy" at the home of [Foster Mother].
>
> By contrast, while [Child] has been living with [Foster Mother], Father has failed to complete his single case plan objectives and failed to participate in essential parenting tasks. Testimony from the CUA case manager observed that Father has never cooked a meal for [Child], has never asked about [Child's] health and medical needs, has not taken [Child] to doctor's appointments, and has not been involved in supporting [Child's] educational goals and needs. Additionally, Father testified that he has only been involved in thirty-eight out of ninety-three possible visits with [Child]. Because there is no testimony evidencing a bond between [Child] and Father, it is reasonable per ***In re K.Z.S.***, 946 A.2d 753, 76[3-64] (Pa. Super. 2008)[,] to assume that there is no bond between [Child] and Father[.] The bond between [Child] and [Foster Mother] is much more evident[.] Thus, removal from [Foster Mother's] care is not in [Child's] best interests.

Tr. Ct. Op. at 8.

The record supports the trial court's factual findings and it did not abuse its discretion when it found it was in Child's best interest to terminate Father's parental rights such that Child would remain with Foster Mother. Child was bonded to Foster Mother, who provided for Child's medical, educational, and emotional needs. There was no evidence that severing any bond Child had with Father "would destroy an existing, necessary and beneficial relationship." *In re N.A.M.*, 33 A.3d at 103 (citation omitted).[4]

Decree and Order affirmed.

Judge Beck joins the memorandum.

Judge Dubow did not participate in the consideration or decision of this case.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/04/2024

---

[4] In the argument section of his appellate brief, Father does not challenge the change of Child's goal to adoption. In any event, because we affirm the termination decree, the appeal from the goal-change order is moot. *See Int. of A.M.*, 256 A.3d 1263, 1272-73 (Pa.Super. 2021) (finding issues regarding goal change moot in light of termination of parental rights); *see also In re D.K.W.*, 415 A.2d 69, 73 (Pa. 1980) (stating once parental rights are terminated, issues of custody and dependency under Juvenile Act are moot).