J-S25017-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: H.B., JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: B.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 790 EDA 2024 |

Appeal from the Order Entered February 15, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000465-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: H.J.J.J.B., JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: B.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 791 EDA 2024 |

Appeal from the Decree Entered February 15, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000020-2024

BEFORE:  DUBOW, J., McLAUGHLIN, J., and BECK, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED OCTOBER 16, 2024**

B.B. ("Mother") appeals from the decree terminating her parental rights as to her minor child, H.B., Jr., a/k/a H.J.J.J.B., Jr. ("Child"), as well as from the order changing the goal to adoption. Mother's counsel has filed an

***Anders***[1] brief and a motion to withdraw as counsel. We grant counsel's motion to withdraw, affirm the termination decree, and dismiss the appeal from the goal-change order as moot.

Child was born in May 2020. In September 2022, Child was placed in the custody of the Philadelphia Department of Human Services ("DHS") due to safety concerns of Mother's and Child's father's[2] drug and alcohol use, mental health issues, lack of housing, and neglect of Child. N.T., 2/15/24, at 9-10. Child was adjudicated dependent in December 2022. In September 2023, Child was moved from foster care to live in kinship care with his paternal grandmother ("Paternal Grandmother") in Georgia. ***Id.*** at 10-11.[3]

On January 18, 2024, DHS filed a petition to terminate Mother's parental rights and change the goal to adoption. A hearing on the petition was held on February 15, 2024.

DHS presented the testimony of caseworker Xiamara Rice. Rice testified that Mother's single case plan objectives were to address drug and alcohol and mental health concerns, obtain housing and employment, attend parenting classes, submit to random drug screens, and visit Child. ***Id.*** at 12-13. Rice

_____

[1] ***Anders v. California***, 386 U.S. 738 (1967); ***see also In re V.E.***, 611 A.2d 1267, 1275 (Pa.Super. 1992) (holding ***Anders*** protections apply to appeals of involuntary termination of parental rights).

[2] Child's father is not a party to this appeal.

[3] The testimony at the termination hearing initially indicated that Child was placed with his maternal grandmother in Georgia. However, the record was later clarified that Child was placed with his paternal, not maternal, grandmother. ***See*** N.T. at 39-40.

stated that she had not received any documentation that Mother attended and/or completed any drug and alcohol treatment or mental health treatment. *Id.* at 17-18. She stated that Mother failed to submit to any random drug screens throughout the life of the case despite being referred to the Clinical Evaluation Unit ("CEU") after every permanency review hearing. *Id.* at 16-17. Mother did, however, complete parenting classes, housing education services, and financial education at the Achieving Reunification Center. *Id.* at 13, 48. Rice stated that Mother lived at a residence in Philadelphia, but Mother had not availed herself to DHS for a house assessment. *Id.* at 14-15. Rice testified that Mother said she was employed, but failed to show Rice any documentation of employment, such as pay stubs. *Id.* at 15-16.

As to Mother's visitation with Child while Child was residing in the Philadelphia area, Rice testified that it was "very inconsistent." *Id.* at 18. Rice acknowledged that she personally had not witnessed a visit with Mother and Child. *Id.* at 37. After Child was moved to live with Paternal Grandmother in Georgia, Mother was offered virtual visits with Child but did not participate in those visits. *Id.* at 19-20. Rice stated that although DHS was willing to work with Mother to have in-person visits with Child in Georgia, Mother did not request in-person visits with Child. *Id.* at 19.

Rice rated Mother's overall compliance with her single case plan objectives as "noncompliant." *Id.* at 20. She rated Mother's progress towards alleviating what brought Child into care as "none." *Id.* at 20-21. Rice testified that there is no parent-child relationship between Mother and Child. *Id.* at 21-

- 3 -

22. She noted that Mother has not provided any financial assistance, food, shelter, or emotional stability to Child since he was placed into care. *Id.* at 29-30. Rice believed that Child could not be safely returned to Mother and that reunification would not be in Child's best interest. *Id.* at 21. She opined that Child would suffer no irreparable harm if Mother's parental rights were terminated. *Id.*

Rice testified that Child and Paternal Grandmother have a "great bond." *Id.* at 11. She indicated that the home is a pre-adoptive home and Paternal Grandmother meets all of Child's physical, emotional, and financial needs. *Id.* at 31-33. Rice testified that Child and Paternal Grandmother have a parent-child relationship and he looks to her as his primary caregiver. *Id.* at 32. Rice said that Child calls Paternal Grandmother, "Mom." *Id.* at 36. She stated that Child loves Paternal Grandmother and feels safe with her and emphasized that Paternal Grandmother provides stability and support for Child. *Id.* at 32. Rice believed that Child would suffer significant harm if he was removed from Paternal Grandmother's care. *Id.*

Mother testified on her own behalf. Mother testified that prior to Child's move to Georgia, she visited Child once a week at a DHS office in Philadelphia. *Id.* at 61. Mother stated that after Child moved to Georgia, she had virtual visits with Child "[a] few times a week" when Paternal Grandmother was at work and Child was being watched by Paternal Grandmother's granddaughter. *Id.* at 63. Mother stated that she has been employed at a security business

for "a couple of months." *Id.* at 64, 75. She indicated, however, that she had not provided verification of her employment to DHS. *Id.* at 64.

Mother further testified that she began attending drug and alcohol classes "a month or two" before the termination hearing. *Id.* at 64-65. She admitted that other than her most recent program, she had not engaged in any other drug and alcohol treatment. *Id.* at 65. Mother testified that she attended a random drug screen a few days before the termination hearing, but "it wasn't completed." *Id.* at 69. She could not recall the last random drug screen she attended before this incomplete screen. *Id.* at 70. Mother stated that she did not believe that she needed any mental health therapy, but if she did, she would attend therapy. *Id.* at 66-67. Mother testified that she lives with Child's father and an aunt in a two-bedroom house in Philadelphia. *Id.* at 67. She stated that a house assessment was never scheduled. *Id.* at 68. Mother further testified that although DHS referred her to Family School, she never attended any sessions at Family School. *Id.* at 70-71. Mother could not recall ever providing anything financially to Child. *Id.* at 71. However, she stated that she and Child's father bought Christmas gifts for Child, "but [there] was a problem with us meeting up [with Paternal Grandmother], so we still have the gifts[.]" *Id.*

At the conclusion of the hearing, the court terminated Mother's parental rights. *Id.* at 106. This appeal followed.

Counsel's *Anders* brief identifies two issues:

1. Whether the Trial Court abused its discretion and erred as a matter of law in terminating [M]other's parental rights under 23 Pa.C.S.A. [§] 2511(a) and (b) because the decision was not supported by competent evidence.

2. Whether the Trial Court abused its discretion and erred as a matter of law in changing the goal of the case to adoption because the decision was not supported by competent evidence.

*Anders* Br. at 8 (suggested answers omitted).

Before we consider whether the appeal is frivolous, we must first determine whether counsel has satisfied the necessary requirements for withdrawing as counsel. *See Commonwealth v. Goodwin*, 928 A.2d 287, 290 (Pa.Super. 2007) (*en banc*) (stating that "[w]hen faced with a purported *Anders* brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw"). To withdraw pursuant to *Anders*, counsel must: 1) "petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous;" 2) furnish a copy of the brief to the client; and 3) advise the client that he or she has the right to retain other counsel or proceed *pro se*. *Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*).

The *Anders* brief must also:

(1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or

- 6 -

statutes on point that have led to the conclusion that the appeal is frivolous.

***Commonwealth v. Santiago***, 978 A.2d 349, 361 (Pa. 2009). If counsel meets all the above obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." ***Id.*** at 355 n.5 (quoting ***Commonwealth v. McClendon***, 434 A.2d 1185, 1187 (Pa. 1981)).

Here, counsel has complied with the above technical requirements. In his ***Anders*** brief, counsel has provided a summary of the procedural and factual history of the case with citations to the record. Further, counsel's brief identifies two issues that could arguably support the appeal, as well as counsel's assessment of why the appeal is frivolous, with citations to the record. Counsel served Mother with a copy of the ***Anders*** brief and advised her of her right to proceed *pro se* or to retain a private attorney to raise any additional points she deemed worthy of this Court's review. ***See*** Motion to Withdraw, 4/30/24, at ¶ 7, Ex. A. Mother has not responded to counsel's motion to withdraw. As counsel has met the technical requirements of ***Anders*** and ***Santiago***, we will proceed to the issues counsel has identified.

The first issue raised in counsel's ***Anders*** brief challenges the sufficiency of the evidence supporting termination of Mother's parental rights under 23 Pa.C.S.A. § 2511(a) and (b).

We review an order involuntarily terminating parental rights for an abuse of discretion. *In re G.M.S.*, 193 A.3d 395, 399 (Pa.Super. 2018). We "accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (quoting *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012)). "If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion." *In re Adoption of K.C.*, 199 A.3d 470, 473 (Pa.Super. 2018). We will reverse a termination order "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *In re Adoption of S.P.*, 47 A.3d at 826.

A party seeking to terminate parental rights has the burden of establishing grounds for termination by clear and convincing evidence. *In re Adoption of K.C.*, 199 A.3d at 473. Clear and convincing evidence is evidence "that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *Id.* (citation omitted).

Termination of parental rights is controlled by section 2511 of the Adoption Act. *In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007). Under this provision, the trial court must engage in a bifurcated analysis prior to terminating parental rights:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [s]ection 2511(a). Only if the court determines that the parent's conduct

- 8 -

warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [s]ection 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*Id.* (citations omitted). To affirm the termination of parental rights, this Court need only affirm the trial court's decision as to any one subsection of section 2511(a). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*).

Here, the court found termination proper under sections 2511(a)(1),(2), (5), and (8), as well as under section 2511(b). *See* N.T. at 106. As only one basis for termination under 2511(a) is necessary, we will focus on the court's termination of Mother's parental rights under section 2511(a)(8), which states:

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\*\*\*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. § 2511(a)(8).

Section 2511(a)(8) "sets a 12-month time frame for a parent to remedy the conditions that led to the children's removal by the court." *In re A.R.*, 837 A.2d 560, 564 (Pa.Super. 2003). Once the 12-month period has been proven, the court "must next determine whether the conditions that led to the children's removal continue to exist." *Id.* "As a result, the relevant inquiry in this regard is whether the conditions that led to removal have been remedied and thus whether reunification of parent and child is imminent at the time of the hearing." *In re I.J.*, 972 A.2d 5, 11 (Pa.Super. 2009). "Termination under [s]ection 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of Agency services." *In re Z.P.*, 994 A.2d 1108, 1118 (Pa.Super. 2010). Further, with respect to a petition filed under section 2511(a)(8), a "court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." *See* 23 Pa.C.S.A. § 2511(b).

Here, it is undisputed that at the time of the filing of the termination petition, Child had been out of Mother's care for almost 17 months. Therefore, we next focus our inquiry on whether the conditions that led to Child's removal from Mother's care continued to exist at the time the court terminated Mother's parental rights.

The court found that the conditions that existed at the time of Child's placement continued to exist. *See* N.T. at 110. The court noted that Mother failed to complete her case plan objectives. *Id.* at 109. The court found Rice,

the DHS caseworker, credible and determined that DHS proved by clear and convincing evidence that termination would best serve the needs and welfare of Child. *Id.* at 111.

We discern no abuse of discretion. The record supports the court's finding that the conditions that led to Child's removal from Mother's home continue to exist. The conditions that led to removal were, *inter alia*, concerns about Mother's drug and alcohol abuse and mental health issues. The unrefuted testimony was that Mother failed to engage in mental health therapy, drug and alcohol treatment, or random drug screens at the CEU. Mother's visitation with Child was also inconsistent and Mother never progressed from supervised visits to unsupervised visits. Thus, the evidence was sufficient to establish termination under section 2511(a)(8) due to Mother's failure to remedy the conditions that led to Child's removal from her care. We perceive no non-frivolous basis on which to challenge the sufficiency of the evidence to support the finding under section 2511(a)(8).

Under section 2511(b), the trial court must consider "the developmental, physical and emotional needs and welfare of the child" to determine if termination of parental rights is in the best interest of the child. *See* 23 Pa.C.S.A. § 2511(b). This inquiry involves assessment of "[i]ntangibles such as love, comfort, security, and stability[.]" *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa.Super. 2005). The court must also examine the parent-child bond, "with utmost attention to the effect on the child of permanently severing that

bond." *Id.* The court must also examine any pre-adoptive home and any bond between the child and the foster parents. *In re T.S.M.*, 71 A.3d at 268.

Here, the court found it was in Child's best interest to terminate Mother's parental rights under section 2511(b). *See* N.T. at 111. The record supports the court's finding. The evidence was sufficient to demonstrate that there is no parent-child bond between Mother and Child. Conversely, the testimony demonstrated that Child has a very supportive and strong bond with Paternal Grandmother, who meets all of Child's physical, emotional, and financial needs and is a pre-adoptive resource. Child looks to Paternal Grandmother as his primary caregiver and calls her "Mom." The testimony was that Child would suffer no irreparable harm if Mother's parental rights were terminated. We thus agree that the challenge to the finding under section 2511(b) is frivolous.

To summarize, we find the issues raised regarding the termination decree in counsel's *Anders* brief are wholly frivolous. Further, after an independent review of the record, we conclude that no other, non-frivolous issue exists. We therefore grant counsel's motion to withdraw. Having determined the appeal is wholly frivolous, we affirm the decree terminating Mother's parental rights. Because we affirm the termination decree, the appeal from the goal-change order is moot, and any appeal would be frivolous. *See Int. of A.M.*, 256 A.3d 1263, 1272-73 (Pa.Super. 2021) (finding issues regarding goal change moot in light of termination of parental rights); *see also In re D.K.W.*, 415 A.2d 69, 73 (Pa. 1980) (stating once parental rights

are terminated, issues of custody and dependency under Juvenile Act are moot). We therefore dismiss that appeal.

Motion to withdraw as counsel granted. Decree affirmed at No. 791 EDA 2024. Appeal dismissed at No. 790 EDA 2024.

Judge Beck joins the memorandum.

Judge Dubow did not participate in the consideration or decision of this case.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/16/2024