392 A.2d 301

## ADOPTION OF BABY GIRL M.

### Appeal of JOSEPH M. S., Jr.

Supreme Court of Pennsylvania.

Argued May 25, 1978.

Decided Oct. 5, 1978.

Harry S. Geller, Chambersburg, for appellant.

William H. Kaye, Chambersburg, for appellee Gordon Beckner, Guardian of Baby Girl M.

J. Stewart Glen, Jr., Geo. S. Glen, Chambersburg, for appellee Children's Aid Society.

Ronald Keeler, Everett, Legal Service for Bedford, Fulton & Huntingdon Counties, for appellee Lois M., Mother of Baby Girl M.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

This appeal is from a final decree entered in the Orphans' Court Division of the Court of Common Pleas of Franklin County. The final decree involuntarily terminated the parental rights of appellant, Joseph M. S., Jr. The facts are as follows.

In August, 1974, a child, Baby Girl M., was born out of wedlock to Lois M. and appellant. At the time of the child's birth, Lois was nineteen and appellant was seventeen. Four

days after her birth, Baby Girl M. was placed by Lois M. with the Children's Aid Society of Franklin County (the Agency) for purposes of adoption.

Subsequently, a petition was filed for the voluntary relinquishment of the parental rights of Lois M. joined by the Agency. A hearing was scheduled for October 29, 1974. Since appellant had refused to accept a letter sent to him by certified mail notifying him of the hearing, the court directed that appellant be personally served with notice of the hearing by the sheriff of Franklin County. Appellant was served the following day. Further, since appellant was a juvenile at the time the court ordered that his mother be appointed guardian ad litem.

A hearing was then held on November 13, 1974. Appellant testified that he did not wish to voluntarily relinquish his parental rights. The hearing was then continued to allow the Agency to file a petition for the involuntary termination of appellant's parental rights. The petition was filed and a hearing was held on December 16, 1974. Because of the death of one of the court reporters, the record of the proceedings was not transcribed until early 1976. A final hearing on the matter was held on April 15, 1976.

On August 19, 1976, the hearing judge filed a decree *nisi* which ordered the involuntary termination of appellant's parental rights. Exceptions were filed and denied by the final decree of January 4, 1977. This direct appeal followed.

The Adoption Act provides:

"The rights of a parent in regard to a child may be terminated after a petition filed pursuant to section 312, and a hearing held pursuant to section 313, on the ground that:

\* \* \* \* \* \*

"(2) The repeated and continued incapacity, abuse, neglect, or refusal of the parent has caused the child to be without essential parental care, control, or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect, or

refusal cannot or will not be remedied by the parent." Act of July 24, 1970, P.L. 620, No. 208, art. III, § 311, 1 P. S. § 311 (Supp. 1978–79).

## I. *Scope of Review*

■   In the case of *In Re Adoption of McAhren,* 460 Pa. 63, 70, 331 A.2d 419, 422 (1975), we stated:

"It is well established that, in view of the irreversible nature and serious emotional impact of the involuntary termination of parental rights, such action is not authorized unless a preponderance of the evidence clearly warrants it."

As a reviewing court, it is our duty to determine if the findings of the court are supported by competent evidence. *In Re Adoption of Baby Girl Fleming,* 471 Pa. 73, 369 A.2d 1200 (1977).

## II. *Merits*

■   The issue before us is whether the trial court correctly concluded that appellant's parental rights should be terminated under § 311(2) of the Adoption Act.  The evidence presented at the hearing established the following:

Shortly after Baby Girl M. was born, she was placed in the custody of the Agency by Lois M.  From August, 1974 until April, 1976, appellant visited his daughter only four times with a full year passing between the second and third visits.[1] During this period, appellant called the Agency only once to ask about the child.  Further, appellant had paid nothing toward either the expenses involved in the baby's birth or the child's support.  Appellant was not employed at the time of the hearings.

At the time of learning that Lois M. was pregnant, appellant balked at marriage, claiming that he wished to finish high school.  Subsequently, he was permanently expelled from school.

---

1.  During this year appellant left Pennsylvania and moved to Florida. During this period, appellant never attempted to make contact with the child.

At the hearing, appellant was unable to articulate his plans for caring for the child except to state that Baby Girl M. would be raised by *his* mother. The judge found that appellant's refusal to allow termination of his parental rights was solely the result of *his* mother's interest in the child, rather than his own concern. The judge made the following relevant findings of fact:

"30. At the present time Joseph is absolutely unable to care for the baby. He has neither the financial resources nor the maturity to provide a home for the baby, short of the continuing interest of his mother.

"31. There is no reason to question the sincerity of the mother's interest in having the baby, but Joseph has not demonstrated his own interest and should something untoward happen to the mother, Joseph is not in a position to care for the baby, nor has he indicated that he would do so."

In the case of *In Re Geiger,* 459 Pa. 636, 639, 331 A.2d 172, 173 (1975), we stated:

"A reading of section 311(2) indicates that three things must be shown before a natural parent's rights in a child will be terminated: (1) repeated and continued incapacity, abuse, neglect or refusal must be shown; (2) such incapacity, abuse, neglect or refusal must be shown to have caused the child to be without essential parental care, control or subsistence; and (3) it must be shown that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied."

We believe the three elements are supported and proven in the record, thus allowing the termination of appellant's parental rights.

In *Appeal of Diane B.,* 456 Pa. 429, 435, 321 A.2d 618, 621 (1974), we defined essential parental duties as "care, control, love, protection, support and subsistence". Appellant had provided none of the elements listed. Further, appellant's refusal to do so has clearly left the child without essential parental care. As we stated in *Appeal of Diane B., supra,* 456 Pa. at 434, 321 A.2d at 620:

" . . . as this Court stated in *Smith Adoption Case,* 412 Pa. 501 at 505, 194 A.2d 919 at 992: 'Parental rights may not be preserved by complete indifference to the daily needs of a child or by merely waiting for some more suitable financial circumstances or convenient time for the performance of parental duties and responsibilities (while others adequately provide the child with her immediate and continuing physical and emotional needs).' Affirmative response to the continuing needs of the child is required if the parental right is not to be forfeited."

Finally, the court found that these deficiencies would not be corrected. The court found, and after reviewing the record we agree, that appellant lacks both the ability and maturity to understand and care for the needs of his child.[2]

▮ Appellant argues that the court erred in considering the best interests of the child in determining if the parental rights should be terminated. The court's decision, however, was based solely on § 311(2) of the Adoption Act. Appellant's claim is both meritless and frivolous.

Having reviewed the entire record, we believe sufficient proof existed to allow termination of appellant's parental rights.

Decree affirmed. Each party to pay own costs.

MANDERINO, J., files a dissenting opinion.

NIX, J., dissents.

MANDERINO, Justice, dissenting.

I dissent. The majority permits an agency to terminate a father's parental right because of (1) the father's poverty and (2) his failure to "communicate" sufficiently with his child, in the custody of others, who was *only* four months old when the legal battle began and about one and one-half years old when the hearing was held. Too bad the appellant

---

2. The trial court also held that appellant's parental rights could be terminated under § 311(1) of the Adoption Act. Having found sufficient evidence under § 311(2), we need not discuss the trial court's alternative holding.

was not born rich with the ability to sire a child prodigy capable of discussing current events at the age of four months—or at the very least eighteen months.