490 Pa. 134 (1980)
415 A.2d 69
In re D.K.W., a minor.
Appeal of C.J.W.
Supreme Court of Pennsylvania.
Argued April 21, 1980.
Decided May 30, 1980.
*135 *136 Kenneth A. Magar, Altoona, for appellant.
*137 Jolene M. Grubb, Patterson, Evey, Routch, Black & Behrens, Hollidaysburg, for appellee.
Before EAGEN, C.J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

OPINION
KAUFFMAN, Justice.
This appeal is from the final decree of the Court of Common Pleas of Blair County, Orphans' Court Division, involuntarily terminating the parental rights of appellant, C.J.W., in her natural daughter, D.K.W.
On January 21, 1977, Blair County Children and Youth Services (hereinafter "Youth Services") and appellant filed a petition with the Orphans' Court Division jointly requesting that Youth Services be granted temporary custody of D.K.W. with right of placement. After hearings on February 24, 1977 and March 16, 1977, the petition was granted and D.K.W. was placed in foster care. Over a year later, on April 25, 1978, appellant filed a petition for modification of the custody order. Shortly thereafter, on June 1, 1978, Youth Services filed a petition to involuntarily terminate appellant's parental rights in her daughter under either § 311(1) or § 311(2) of the Adoption Act, Act of July 24, 1970, P.L. 620, No. 208, art. III, § 311, 1 P.S. § 311 (Supp. 1964-78). The Court consolidated the two actions and, after a hearing,[1] entered a final decree on December 4, 1979, *138 involuntarily terminating appellant's parental rights under § 311(2) of the Adoption Act.[2] This direct appeal followed.[3]
The lower court's decision to terminate was based on findings that D.K.W. had been exposed to abuse and mistreatment; that appellant recognized she was unable to care for D.K.W.; that neglect and abuse had deprived D.K.W. of essential parental care; and that the neglect, abuse, and inability to care for D.K.W. would not and could not be remedied in the future. Review of the record discloses that the lower court's findings are adequately supported by the evidence. Accordingly, we affirm.
Our responsibility on review is limited to determining whether the lower court's findings are supported by competent evidence. Adoption of Baby Girl M., 481 Pa. 171, 392 A.2d 301 (1978); Adoption of R.I., 468 Pa. 287, 361 A.2d 294 (1976). In making this determination, "we must take as true all the evidence supporting the findings and all reasonable inferences therefrom." In Re William L., 477 Pa. 322, 340, 383 A.2d 1228, 1237, cert. denied, 439 U.S. 880, 99 S.Ct. 216, 58 L.Ed.2d 192 (1978). "If [competent] evidence appears in the record, we must affirm the hearing court even though the record could support an opposite result." Matter of Kapcsos, 468 Pa. 50, 54, 360 A.2d 174, 176 (1976).
D.K.W. was born on June 23, 1976. At that time, appellant was separated from her husband and was living "off and on" with M.W., the putative father of D.K.W. When *139 D.K.W. was three months old, a Youth Services caseworker was called to investigate a child abuse complaint which alleged that M.W. had beaten and slapped the child, causing bruises to her legs and bottom, and that he had held her nose while feeding her. The complaint further alleged that appellant had physically abused the child. Confronted with these allegations, both appellant and M.W. admitted that they were true. M.W. also admitted beating appellant on numerous occasions, and the caseworker testified that appellant was "covered from head to toe with bruises" on the day she visited appellant's home to investigate the child abuse complaint.
Recognizing her inability to cope with the problems with which she was faced and fearing for the child's safety, appellant voluntarily relinquished custody of D.K.W. to her sister on January 17, 1977. This arrangement proved unsatisfactory however. Just four days after taking the child, appellant's sister contacted Youth Services and advised them that M.W. had made repeated threats on her life as well as the child's, that she feared for both her and D.K.W.'s safety, and that she no longer could care for the child. At that time, appellant informed Youth Services that because of the ongoing problems with M.W., her nerves were bad and she was unable to care for D.K.W. Appellant also expressed the fear that M.W. would abuse the child and that she, too, might have a tendency to do so. Thus, on January 21, 1977, appellant joined with Youth Services in requesting foster care for D.K.W. The child initially was placed with a maternal aunt, and in July 1977, D.K.W. was placed in the home of the foster parents with whom she currently resides.
Appellant testified that she no longer lives with M.W., and that she moved away from him in November 1976 after Youth Services informed her that D.K.W. would not be returned to her unless her situation with M.W. changed. She further testified that she has done everything within her power to stay away from him, but it is clear that she has *140 not rid herself of him or his violence.[4] By appellant's own testimony at the May, 1979 hearing, M.W. continues to follow her, threaten her and fight with her. He also has broken into her home on several occasions and has waited for her many times while she was out. Thus, despite her recognition of and asserted attempts to remedy the problem, she has not succeeded. Though appellant may have moved away from M.W. for the purpose of improving her situation and regaining custody of her child, she clearly did not move far enough.[5]
In March and July 1977, the court established guidelines and conditions for reunification of appellant and her daughter. The guidelines included various types of counselling as *141 well as the requirement that appellant keep a record of her visits with D.K.W. Appellant never completed the required counselling and has been remiss in recording her visits. Moreover, although she has been afforded liberal visiting privileges, she has declined to take full advantage of them. On several occasions she missed visits altogether, and during some of the visits which took place at the foster home, appellant watched television rather than attend to the child. Further, on some occasions when she had D.K.W. for day visits, appellant returned the child tired and dirty.
In addition to the foregoing unfortunate circumstances, D.K.W. has a hip deformity which may eventually require amputation of her leg. The child has undergone corrective surgery twice, and both times was placed in a body cast for several months. While in the cast, D.K.W. was in need of special care and attention, which appellant was incapable of providing despite efforts to instruct her how to do so. The child still requires regular therapy sessions several times a week at home and at the hospital. D.K.W.'s foster mother has received training and administers the home therapy. In contrast, although the special training was made available to appellant through several social agencies, she has failed to learn how to attend to D.K.W.'s special needs.
In light of the foregoing facts and circumstances, we conclude that the trial court's finding that appellant's continued incapacity to provide essential care for D.K.W. will not be remedied is adequately supported by the record. During the more than three years that D.K.W. has been in foster care, appellant has done little to fulfill her essential parental duties, which we have defined as "care, control, love, protection, support and subsistence." Adoption of Baby Girl M., 481 Pa. at 175, 392 A.2d at 304; Appeal of Diane B., 456 Pa. 429, 321 A.2d 618 (1974). Although "[a] parent may . . . fulfill parental duties and provide for a child by making suitable arrangements for the child's temporary care [citation omitted] or by allowing others to provide essential parental services during a period of crisis," *142 Appeal of Diane B., 456 Pa. at 434, 321 A.2d at 620, "[e]xtended relegation of a child to the care of others as a result of parental incapacity is relevant in determining whether the child has been without essential parental care or control." In Re William L., 477 Pa. 322, 333, 383 A.2d 1228, 1233, cert. denied, 439 U.S. 880, 99 S.Ct. 216 (1978). Thus, "when a child has been placed in foster care, a parent has an affirmative duty to work towards the return of the child." Id. For a period of over three years, appellant has demonstrated her incapacity to provide D.K.W. with essential parental care. More importantly, it is clear that she is unable to remedy the conditions and causes of her incapacity. Thus, appellant has forfeited her parental rights.
Appellant raises two additional allegations of error: First, she charges that the lower court erred in failing to make a specific finding that D.K.W. was "dependent" within the meaning of the Juvenile Act, Act of July 9, 1976, P.L. 586, No. 142, § 2, as amended, 42 Pa.C.S.A. § 6301 et seq. (Pamph. 1979). If a child is adjudicated "dependent," a court may take the child from the parent and grant temporary legal custody to an appropriate agency or individual. See 42 Pa.C.S.A. § 6351. Appellant argues that the court required to make a specific finding of dependency before it could order continued placement of D.K.W. in foster care. However, once the court terminated appellant's parental rights under the Adoption Act, the issue of custody under the Juvenile Act became moot and it was unnecessary to make a finding that D.K.W. was "dependent." Secondly, appellant contends that the lower court erroneously applied the "best interest of the child" standard in terminating appellant's parental rights. This claim is without merit since the opinion of the court below clearly reflects that its decision was grounded upon the criteria set forth in § 311(2) of the Adoption Act. See Adoption of Baby Girl M., 481 Pa. 171, 392 A.2d 301 (1978).
Decree affirmed. Each party to pay own costs.
NOTES
[1] Initially, the hearing on both petitions had been set for June 6, 1978. Due to repeated postponements, however, the hearing was not commenced until November 10, 1978 and was continued to May 23, 1979 for the taking of additional testimony.
[2] Section 311(2) provides:

§ 311 Grounds for involuntary termination
The rights of a parent in regard to a child may be terminated after a petition filed pursuant to section 312, and a hearing held pursuant to 313, on the ground that:
* * * * * *
(2) The repeated and continued incapacity, abuse, neglect, or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect, or refusal cannot or will not be remedied by the parent.
[3] Jurisdiction is vested in this Court pursuant to the Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, § 2, as amended, 42 Pa.C.S.A. § 722(3) (Pamph. 1979).
[4] When asked by the caseworker about her relationship with M.W., appellant indicated that he frequently would beat her and leave bruises. Appellant often had approached a magistrate for the purpose of pressing charges against M.W., but later dropped them. She related that she still had an interest in her husband, from whom she was separated, and that this caused difficulty in her relationship with M.W. Although appellant expressed dissatisfaction with her personal situation, she felt unable to discontinue the relationship with M.W. because of the possibility that he was D.K.W.'s father. She also stated that she had experienced much violence in her own family while growing up and, consequently, did not feel that she deserved anything better.
[5] The instant case differs significantly from In Re Adoption of Melissa P., 475 Pa. 197, 380 A.2d 311 (1977) (plurality opinion), where the minor child was the victim of physical abuse by her stepfather. We recognized that it is "necessary to show that the causes of the . . abuse . . . cannot or will not be remedied by the parent" in order to terminate under § 311(2). We further acknowledged that "regardless of a parent's past transgressions, a court should not terminate parental rights if the parent stands ready and able to assume the responsibility of rearing his or her child [citation omitted]." In commenting upon the inapplicability of § 311(2) we noted that appellant (the natural mother) sought to cure the source of the abuse by encouraging her husband to enter counselling, and later "saw fit to remove the source of the abuse by living apart from her husband." 475 Pa. at 200, 380 A.2d at 312. Moreover, unlike the instant case "[t]he record [was] barren of evidence to contradict her assertions that she [stood] ready and able to assume the responsibility of raising [the child.]" Id. Here, despite appellant's apparent desire to regain custody of D.K.W., she failed to convince the lower court that the source of the abuse had been eliminated and that she was capable of providing the child with essential parental care.