J-S27014-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.R.I., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.P., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 155 EDA 2024 |

Appeal from the Order Entered December 5, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000176-2023

| | | |
|---|---|---|
| IN THE INTEREST OF K.R.I., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.P., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1058 EDA 2024 |

Appeal from the Decree Entered December 5, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000456-2023

BEFORE: LAZARUS, P.J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY LAZARUS, P.J.:            **FILED OCTOBER 17, 2024**

_____

[*] Retired Senior Judge assigned to the Superior Court.

K.P. (Mother) appeals from the decree and order[1] involuntarily terminating Mother's parental rights to K.R.I. (Child) (born February, 2023)[2] pursuant to the Adoption Act[3] and changing the permanency goal to adoption.[4] We affirm.

On February 25, 2023, the Philadelphia Department of Human Services (DHS) received a General Protective Services (GPS) report stating that Mother gave birth to Child, that Mother and Child tested positive for phencyclidine (PCP), and that Mother had previously tested positive for PCP at the birth of another child. Mother, who suffers from bipolar disorder, refused substance abuse treatment and threatened to leave the hospital against medical advice.

That same day, DHS obtained an order for protective custody (OPC) and Child was placed in foster care. Two days later, on February 27, 2023, the court held a shelter care hearing, lifted the OPC, and ordered temporary commitment to DHS to stand.

_____

[1] Mother appealed the goal change on January 2, 2024, and she appealed *nunc pro tunc* from the decree terminating her parental rights on April 15, 2024. By order dated April 23, 2024, this Court consolidated the appeals *sua sponte*. **See** Pa.R.A.P. 513.

[2] Andre Martino, Esquire, represented Child as advocate and guardian *ad litem* (GAL), pursuant to 23 Pa.C.S.A. § 2313(a). Attorney Martino has filed a brief as GAL and agrees with the trial court's order and decree. **See** Participant's Brief, at 9.

[3] **See** 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b).

[4] The trial court entered a decree terminating Father's parental rights after Father voluntarily relinquished those rights. Father is not a party to this appeal.

On April 25, 2023, the court adjudicated Child dependent, suspended Mother's visits, and referred her to the Clinical Evaluation Unit (CEU) for a drug screen, a dual diagnosis assessment, and three random drug screens. Mother was referred for anger management and to the Achieving Reunification Center (ARC) for parenting, employment, and housing. The court also found aggravated circumstances as to Mother on two grounds. *See* 42 Pa.C.S.A. § 6302.[5]

On June 23, 2023, a revised Single Case Plan (SCP) was created. Mother's objectives were as follows: secure housing and employment; engage in mental health treatment; participate in anger management; obtain dual diagnosis assessment; and comply with three random drug screens. The court held a permanency review hearing on September 19, 2023, at which it was determined there was no compliance with the permanency plan as to Mother. Mother was again referred to the CEU for immediate drug screen, a dual diagnosis assessment and three random drug screens. In light of Mother's arrests in June of 2023 for aggravated assault, simple assault, and reckless

---

[5] On April 25, 2023, the court found aggravated circumstances under subsection 6302(2) ("The child or another child of the parent has been the victim of physical abuse resulting in serious bodily injury, sexual violence or aggravated physical neglect by the parent.") and subsection 6302(5) ("The parental rights of the parent have been involuntarily terminated with respect to a child of the parent."). *See* 23 Pa.C.S.A. § 6302(2), (5). *See also* N.T. Termination Hearing, 12/5/23, at 12. The court also entered an order that no reasonable efforts be made to preserve the family and reunify Child with Mother. *Id.* Despite this, the court offered Mother referrals to the CEU for drug screens, dual diagnosis (substance use/mental health) assessments, and random drug screens, referral to ARC for parenting, housing, and employment courses, and referral for anger management counseling.

endangerment, and in September of 2023 for disorderly conduct, as well as continued aggressive behavior toward CEU staff, Mother was also ordered to engage in anger management.

On November 16, 2023, DHS filed petitions to involuntarily terminate Mother's parental rights to Child and to change Child's permanency goal from reunification to adoption. Following a hearing on December 5, 2023, the court involuntarily terminated Mother's parental rights and entered an order changing the goal to adoption. *See* N.T. Termination Hearing, 12/5/23, at 109-110, 114-15; *see also* 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), and (b); *id.* at § 6351.

On appeal, Mother raises the following issues:

1. Whether the trial court erred or abused its discretion when terminating Mother's rights under 23 Pa.C.S.A. §§ 2511(a)(1), (2), and (5) absent clear and convincing evidence.

2. Whether the trial court erred or abused its discretion when terminating Mother's rights under 23 Pa.C.S.A. § 2511(b), and changing [Child's] goal to adoption.

Appellant's Brief, at 5.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously

- 4 -

emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (brackets, citations and quotation marks omitted).

Mother first argues DHS failed to meet its burden of proving termination was proper. *See* Appellant's Brief, at 7, 9. Termination of parental rights is governed by section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [s]ection 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [s]ection 2511(b): determination of the needs and welfare of the child[.]

*In re C.M.K.*, 203 A.3d 258, 261-62 (Pa. Super. 2019) (citation omitted).

Here, the trial court terminated Mother's parental rights pursuant to sections 2511(a)(1), (2), (5), and (b). We need only agree with the court as to any one subsection of section 2511(a), as well as section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (en banc). Moreover, we may uphold a termination decision if any proper basis exists in this record for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (en banc).

We analyze the court's decision to terminate under section 2511(a)(1) and (b), which provide as follows:

- 5 -

**(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\*\*\*

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\*\*\*

**(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

Here, the court found that DHS established the statutory grounds for termination under subsection 2511(a)(1) by clear and convincing evidence:

Petitions in this matter were filed on November 16, 2023. In the six months preceding that time, there has been nothing provided by [M]other through her counsel to establish that she was actively engaged in any of the court-ordered objectives that were set forth for her. There was no documentation to show any attempt to address either her mental health or her drug and alcohol issues in those six months. It should be noted that [Child] was born with illicit substances in [his] system, so, there was certainly a reason to suggest that this dual diagnosis assessment was needed. There was also evidence of prior diagnoses, including bipolar [disorder] and other mental health issues, that went unaddressed. Also, [M]other's behaviors throughout the process of this case ha[ve] demonstrated a need for services that she has not availed herself of in those six months preceding the filing of the petition, and she

- 6 -

failed to perform any parental duties in those six months. . . . She does not seem to believe she has any mental health diagnosis, and throughout this process, her behavior, which at times has resulted in her having to be forcibly removed from the courtroom, demonstrates her need for mental health treatment, and she does not wish to participate in any meaningful manner in order to do that[.] Demonstrated by [Mother's] testimony today, she does not wish to actively engage in these objectives, and despite her representation of any willingness to do so, she has not, for the life of this case. With regard[] to [subsection] 2511(b), there is no parent-child bond. Mother has not seen [Child] since [Child] left the hospital. She has not had any chance to bond with [Child], and I find that [Child] would suffer no irreparable harm. So, I find that [DHS] met its burden through clear and convincing evidence, from credible witness testimony[.]

N.T. Termination Hearing, *supra* at 110-14; *see also* Pa.R.A.P. 1925(a) Opinion, 2/1/24, at 1-2.

At the hearing, CUA Case Management Supervisor Greg Williams and Mother testified. Williams began working with Mother prior to Child's birth and placement. *See* N.T. Termination Hearing, *supra* at 19. He explained that Mother's pattern of aggressive behavior, and her refusal to believe she required services, made it difficult for CUA to work with her. *Id.* at 20, 76. Mother failed to comply with her SCP objectives to facilitate reunification; she refused to comply with substance use treatment, mental health treatment, random drug screens, and anger management counseling, as well as parenting, housing and employment courses. *Id.* at 23-24, 42. Throughout Child's dependency, Mother failed to attend CEU for drug screens or assessments. *Id.* at 32, 52, 74. Williams characterized Mother as non-

- 7 -

compliant with her SCP objectives, and he concluded Mother had made no progress toward reunification. *Id.* at 44.

With regard to section 2511(b), Williams also testified to the lack of a parent-child bond, essentially brought on by Mother's failure to comply with her SCP objectives, and Child's bond with his foster parent. On direct examination by counsel for DHS, Williams testified as follows:

> MS. MORRIS: How would you rate [Mother's] compliance with her [SCP] objectives, on a scale of none, minimal, moderate, substantial, or full?
>
> MR. WILLIAMS: None.
>
> MS. MORRIS: And how would you rate her progress towards alleviating dependency?
>
> MR. WILLIAMS: None.
>
> MS. MORRIS: Do you believe that [Child] can safely be returned to [Mother's] care today?
>
> MR. WILLIAMS: No.
>
> MS. MORRIS: Why not?
>
> MR. WILLIAMS: Due to the unaddressed dual diagnosis, her drug and alcohol,--her behaviors, and unaddressed mental health. And the safety of the child right now is –you know, I want to make sure that she addresses those type of things first.
>
> MS. MORRIS: Have you ruled out reunification with [Mother] at this time?
>
> MR. WILLIAMS: Yes.
>
> MS. MORRIS: Is there a parent-child relationship between [Mother] and [Child]?
>
> MR. WILLIAMS: No. [] She has not had any visits with [Child], and [Child] does not know her --

MS. MORRIS: Does [Mother] provide financially for [Child]?

MR. WILLIAMS: No.

MS. MORRIS: Has she ever sent cards, letters, or gifts for him?

MR. WILLIAMS: No, not that I'm aware of.

MS. MORRIS: If [Mother's] parental rights were terminated, would [Child] experience any irreparable harm?

MR. WILLIAMS: No.

MS. MORRIS: Why not?

MR. WILLIAMS: Due to the fact that [Child] is bonded with the current resource parent. He relates to [the resource parent] as a [] mother. [Mother] has not had any type of physical contact with [Child], so [Child] does not [] identify [Mother] as [his] mother at this time.

N.T. Termination Hearing, *supra* at 109-15.

Based upon the evidence of record, we conclude that DHS proved, by clear and convincing evidence, that termination was proper under section 2511(a)(1) where Mother, for "a period of at least six months immediately preceding the filing of the [termination] petition[,] . . . refused or failed to perform parental duties." 23 Pa.C.S.A. § 2511(a)(1). Mother has not been a part of Child's life since birth, has provided no emotional, financial, or physical support during Child's lifetime, has made no progress in her SCP objectives, has undermined any chance of reunification by failing to comply with court orders, and is operating under the misguided belief that she is not in need of assessment or treatment. As noted above, the court stated on the record that Mother does not believe she has any mental health diagnosis, that her behavior throughout the course of this matter demonstrates otherwise, and

that Mother is resistant to participate in assessments or treatment programs. *See* N.T. Termination Hearing, *supra* at 113.

Finally, CUA case manager Williams testified that Mother and Child are not bonded, that termination would not irreparably harm Child, and that adoption would be in Child's best interests. Here, Child views foster parent, who has been identified as an adoption resource, as his mother and she is meeting all of Child's physical, emotional, medical, and developmental needs. *Id.* at 45-47. *See* 23 Pa.C.S.A. § 2511(b). We find no error of law or abuse of discretion. *C.M.K.*, *supra*.

Next, Mother argues the court abused its discretion in changing the placement goal to adoption. Appellant's Brief, at 13. Because we affirm the termination decree, the appeal from the goal-change order is moot. *See Int. of A.M.*, 256 A.3d 1263, 1272-73 (Pa. Super. 2021) (finding issues regarding goal change moot in light of termination of parental rights); *see also In re D.K.W.*, 415 A.2d 69, 73 (Pa. 1980) (stating once parental rights are terminated, issues of custody and dependency under Juvenile Act are moot).

We conclude the court's factual findings are supported in the record, and we find no error of law or abuse of discretion. *T.S.M.*, *supra*. The court stated on the record that it found Williams' testimony credible, *see* N.T. Termination Hearing, *supra* at 114; because that determination is supported in the record, this Court is bound by that determination. *T.S.M*, *supra*. Additionally, Child has bonded with his resource parent, who provides for

Child's physical and emotional needs. The record demonstrates termination is in Child's best interests.

For the foregoing reasons, we conclude the evidence supported the involuntary termination of Mother's parental rights. Accordingly, we affirm.

Order and decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/17/2024