J-A01044-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2101 EDA 2024 |

Appeal from the Order Entered August 2, 2024
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-DP-0000756-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: A.T.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2102 EDA 2024 |

Appeal from the Decree Entered August 2, 2024
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-AP-0000173-2024

| | | |
|---|---|---|
| IN THE INTEREST OF: J.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: J.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2103 EDA 2024 |

Appeal from the Order Entered August 2, 2024
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-DP-0000757-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: J.R.,III, A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2104 EDA 2024 |

Appeal from the Decree Entered August 2, 2024
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-AP-0000174-2024

| | | |
|---|---|---|
| IN THE INTEREST OF: B.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2105 EDA 2024 |

Appeal from the Order Entered August 2, 2024
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-DP-0000754-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: B.L.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2106 EDA 2024 |

Appeal from the Decree Entered August 2, 2024
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-AP-0000171-2024

J-A01044-25

IN THE INTEREST OF: J.R., A MINOR : IN THE SUPERIOR COURT OF
                                                :          PENNSYLVANIA
                                                :

APPEAL OF: J.R., MOTHER           :
                                                :
                                                :
                                                :
                                                :
                                                :     No. 2107 EDA 2024

Appeal from the Order Entered August 2, 2024
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-DP-0000755-2022

IN THE INTEREST OF: J.L.R., A : IN THE SUPERIOR COURT OF
MINOR                               :          PENNSYLVANIA
                                                :
                                                :

APPEAL OF: J.R., MOTHER           :
                                                :
                                                :
                                                :
                                                :
                                                :     No. 2108 EDA 2024

Appeal from the Decree Entered August 2, 2024
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-AP-0000172-2024

BEFORE: DUBOW, J., KING, J., and SULLIVAN, J.

MEMORANDUM SULLIVAN, J.:             **FILED MARCH 20, 2025**

      J.R. ("Mother") appeals from the decrees involuntarily terminating her parental rights to her four biological children: daughter, B.R. a/k/a B.L.R. (born in October 2009); daughter, J.R. a/k/a J.L.R. (born in June 2011); daughter, A.R. a/k/a A.T.R. (born in August 2017); and son J.R. a/k/a J.R.,

- 3 -

III (born in March 2019) (collectively, "the Children").[1] Mother also appeals from the orders changing the Children's permanency goals from reunification to adoption. Upon review, we affirm the termination decrees and dismiss the appeals from the goal change orders as moot.

The factual and procedural history of this case is as follows. The Philadelphia Department of Human Services ("DHS" or "the Agency") became aware of this family in August of 2021, after it received a report from the child welfare agency in Schuylkill County alleging that the Children had recently reunified with Parents in Philadelphia following an approximately two-year placement in kinship care with D.R. ("Paternal Aunt"). The Children were ages eleven, ten, three, and two years old, respectively, at the time of this reunification. One year later, on August 15, 2022, DHS received another report alleging, *inter alia*, that Parents were using crack cocaine and methamphetamines. Upon investigation, DHS determined that Mother was abusing cocaine, and that she suffered from mental illnesses including bipolar disorder.

The Agency subsequently filed dependency petitions concerning the Children and, following a hearing, the trial court adjudicated them dependent in September 2022, and placed them in kinship care with Paternal Aunt.

---

[1] The Children's biological father, J.R. Jr. ("Father," collectively with Mother, "Parents"), voluntarily relinquished his parental rights to the Children in May 2024. Father did not appeal or participate in Mother's instant appeals.

Thereafter, the court established the Children's respective permanency goals as reunification. In furtherance of that goal, Mother was ordered to participate in, *inter alia*, drug and mental health dual diagnosis evaluation at the Clinical Evaluation Unit ("CEU"); drug and alcohol treatment; random drug screens at the CEU; mental health services; and supervised visitation with the Children. A community umbrella agency ("CUA") administered Mother's various services on behalf of the Agency.

Throughout the ensuing dependency proceedings, the trial court held regular permanency review hearings between December 2022 and May 2024. At those hearings, the court largely found that Mother had minimally complied with her objectives.[2] The court also consistently found that Mother made minimal progress towards reunification.

With respect to Mother's objective to address her drug addiction, she never provided the Agency with the requested documentation from her provider to verify her compliance and progress in the program. **See** N.T., 8/2/24, at 78-79, 91, 129, 134, 140, 142-43. While Mother provided CUA with a certificate of completion dated March 8, 2024, from a program facilitated by Northeast Treatment Centers ("NET"), the certificate of completion contained no information about how frequently Mother attended,

---

[2] The trial court found Mother to be in moderate compliance in permanency review orders filed on December 12, 2022, and November 20, 2023. **See generally** DHS Exhibits 1-4 (the Children's dependency records).

what the treatment consisted of, or what was required for Mother to obtain the certificate of completion. *See id*. at 75, 78-79, 91, 139. Additionally, Mother did not consistently attend the required CEU drug screens. *See id*. at 81, 85. Of the screens she did attend, Mother tested positive for cocaine on five occasions, with the most recent positive result occurring on December 27, 2023. *See id*. at 87-88, 90-91. Mother missed two screens in 2024, which count as positives. *See id*. at 81-82, 150. Regarding her mental health, Mother also failed to provide the Agency with the requisite documentation needed for CUA to verify her participation and progress in treatment. *See id*. at 102, 116-17, 119, 128, 134.[3] As a result, CUA had no knowledge of any mental health treatment, past or present, that Mother claimed to have been enrolled in or completed. *See id*.[4]

_____

[3] Paternal Aunt corroborated DHS's concerns about Mother's drug addiction, stating that she did not believe Mother had ceased using illegal drugs due to her behavior during their interactions. *See id*. at 170-71. For example, Paternal Aunt indicated that Mother accused her of "things from beating the [C]hildren, to sex trafficking, to being a member of a gang." *Id.* at 170. Paternal Aunt attributed Mother's accusations to her unremedied drug addiction. *See id*.

[4] Additionally, DHS caseworker, Tahira Banks ("Ms. Banks"), stated that she remained concerned about Mother's mental health due to Mother's irrational accusations. *See* N.T., 8/2/24, at 117, 167. Ms. Banks stated that Mother accused her of "being from the black market" and "going to the same church as [Paternal] Aunt." *See* N.T., 8/2/2024, at 117. Paternal Aunt echoed this concern, testifying that there was a "strong possibility" that Mother continued to suffer from untreated mental health issues. *Id*. at 171. Additionally, we note that at the outset of the hearing, Mother's counsel questioned the court about its potential affiliation with a pastor to determine whether or not to bring
*(Footnote Continued Next Page)*

With respect to Mother's visitation with the Children, the court ordered liberal visitation, to be supervised by Paternal Aunt, and with CUA supervising one visit per month. Visitations were permitted virtually or in-person, and occurred at either Paternal Aunt's home, in the community, or with the Agency. However, between November 20, 2023, and January 29, 2024, the court ordered that Mother's supervised visitations and contact with the Children be solely at their discretion, following a request to that effect by fourteen-year-old B.L.R. *See* N.T., 8/2/24, at 104-05. B.L.R. expressed to Paternal Aunt that she doubted Mother's ability to reunify with her and her siblings. *See* N.T., 8/2/24, at 161. This condition, with respect to B.L.R., remained in place at the time of the subject proceedings. *See generally* DHS Exhibit 1. However, this condition was lifted vis-à-vis Mother's supervised visitations with the other children on May 28, 2024. *See generally* DHS Exhibits 2-4. Mother's visitations and contact with the Children never progressed past supervised visitation. *See* N.T., 8/2/24, at 99, 153, 171. Mother's participation in the visitations and phone calls was largely inconsistent. *See id*. at 153-54.

On April 25, 2024, DHS filed petitions for the involuntary termination of Mother's parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). The Agency filed separate simultaneous

_____

a recusal motion, based on Mother's false belief there was some relation between the two. *See id*. at 8, 189.

goal change petitions with respect to the Children requesting that their permanency goals be changed to adoption.

The trial court held a combined evidentiary hearing on August 2, 2024, at which the court received the testimony and evidence summarized above. The Children, then ages fourteen, thirteen, six, and five, had been in DHS custody for twenty-two months at the time of these proceedings. The Children's best interests were represented by their court-appointed guardian *ad litem* ("GAL"), Robert Horwitz, Esquire. The Children's legal interests were represented by their court-appointed legal counsel, James Martin, Esquire.[5] DHS presented the testimony of the following witnesses: Mother, as an adverse witness; the DHS caseworker, Ms. Banks; and Paternal Aunt. The oldest daughters, B.L.R. and J.L.R., testified *in camera* with all counsel present.[6]

_____

[5] Our Supreme Court has held that "appellate courts should engage in *sua sponte* review to determine if [trial] courts have appointed counsel to represent the legal interests of children in contested termination proceedings, in compliance with" 23 Pa.C.S.A. § 2313(a). ***In re Adoption of K.M.G.***, 240 A.3d 1218, 1235 (Pa. 2020). In this case, the trial court appointed separate legal counsel for the Children. ***See*** Letter of Appointment, 7/6/23. As such, the court complied with the requirements of 23 Pa.C.S.A. § 2313(a).

[6] This testimony was sealed and is not present in the certified record. ***See*** N.T., 8/2/24, at 10. Although it is Mother's responsibility, as the party seeking relief, to ensure this Court has the full certified record on appeal, we conclude that its omission does not impede our review. ***See*** Pa.R.A.P. 1911, 1921. We note that the trial court marginally referenced this testimony in its decision: the court observed that the testimony was consistent with legal counsel's representations to the court regarding B.L.R.'s and J.L.R.'s wishes, that is, to
*(Footnote Continued Next Page)*

At the hearing, Ms. Banks and Paternal Aunt additionally testified as follows: Ms. Banks testified that Mother's visitation with the Children was never expanded to unsupervised interactions due to her inconsistency in attendance, which was corroborated by Paternal Aunt's testimony. *See id*. at 95, 99, 153-54, 159, 171-72. Specifically, Paternal Aunt stated that Mother missed six out of ten phone calls in June 2024 and four out of seven phone calls in July of 2024 alone. *See id*. at 154. Further, Mother did not have her monthly in-person visit in July 2024 because she failed to schedule the visit with Paternal Aunt. *See id*. at 154-55. Paternal Aunt testified that she would not tell the Children when the visits or phone calls were scheduled because she did not "want them waiting around anticipating a call that . . . doesn't come" because Mother has been inconsistent "since day one." *Id*. at 156. Importantly, Ms. Banks testified, "The Children have stated that they want [the visitation] to be supervised by [Paternal Aunt]. They don't feel comfortable with having unsupervised visits." *Id.* at 99.[7]

_____

be adopted by Paternal Aunt. *See* N.T., 8/2/24, at 197. Thus, our review is not impeded by the absence of the sealed testimony.

[7] Both Ms. Banks and Paternal Aunt acknowledged that Mother's initial visits with the Children had been positive and generally occurred without significant issues. *See* N.T., 8/2/24, at 96, 155, 168. However, Paternal Aunt noted that Mother's interest and concern regarding the Children's well-being had eroded over time. *See id*. at 157-58 (averring that Paternal Aunt had to begin prompting Mother with conversation topics during calls with the Children approximately one year following placement).

Additionally, Paternal Aunt testified that the Children do not ask to speak with Mother outside their visitation, except for occasions where Mother has gone several weeks without contact. *See id*. at 157. With respect to the oldest child, B.L.R., Ms. Banks confirmed that B.L.R. specifically requested to CUA that the visitation be ordered at her discretion "so she could choose not to see [Mother]." *Id.* at 104-05. Paternal Aunt recounted that when "Ms. [Banks] told . . . the kids that [Mother's new] home was really nice[,] [B.L.R.] said to me, 'I've been here before.'" *Id*. at 161.

Paternal Aunt testified that she speaks to the Children about their relationships with Mother and they all expressed that they love her. *See id*. However, Ms. Banks testified that the Children look to Paternal Aunt for parental support, not Mother. *See id*. at 103-112. Ms. Banks declared that "the Children have stated that they feel – they don't feel safe in [Mother]'s care. They actually stated that they feel more safe with [Paternal Aunt]." *Id*. at 102. Ms. Banks attested that the Children would not suffer any detrimental impact if Mother's parental rights were terminated. *See id*. at 121-22, 124-26. When asked her reasoning, Ms. Banks stated that the two oldest children, fourteen-year-old B.L.R. and thirteen-year-old J.L.R, want to be adopted by Paternal Aunt. *See id*. at 105, 125-26. Ms. Banks further explained that six-year-old A.T.R. expressed desire to stay with Paternal Aunt. *See id*. at 105, 124. Finally, Ms. Banks testified that five-year-old J.R., III, had cumulatively spent more time in the care of Paternal Aunt than with Mother. *See id*. at

121-22, 151, 162. Conversely, Ms. Banks stated that the Children would be heavily and negatively impacted if removed from Paternal Aunt's care. *See id*. at 122-23, 125-26. The Children had spent more than half of the last five years in Paternal Aunt's care due to their previous kinship placement with her and the current dependencies. *See id*. at 152.

Following the hearing, the trial court involuntarily terminated Mother's parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). On the same date, the court also filed orders changing the Children's permanency goals from reunification to adoption.

Mother timely filed separate notices of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court filed a Rule 1925(a) opinion directing this Court to its reasoning stated in open court at the conclusion of the hearing. In September 2024, this Court *sua sponte* consolidated these matters for resolution pursuant to Pa.R.A.P. 513.

On appeal, Mother presents the following issues for our review:

1. Whether the trial court erred by terminating the parental rights of [M]other pursuant to 23 Pa.C.S.A. [§] 2511(a)(1) without clear and convincing evidence of [M]other's intent to relinquish her parental claim or refusal to perform her parental duties.

2. Whether the trial court erred by terminating the parental rights of [M]other pursuant to 23 Pa.C.S.A. [§] 2511(a)(2) without clear and convincing evidence of [M]other's present incapacity to perform parental duties.

3. Whether the trial court erred by terminating the parental rights of [M]other pursuant to 23 Pa.C.S.A. [§§] 2511(a)(5) and (8)

- 11 -

without clear and convincing evidence to prove that reasonable efforts were made by [DHS] to provide [M]other with additional services, and that the conditions that led to placement of the [C]hildren continue to exist.

4. Whether the trial court erred by terminating the parental rights of [M]other pursuant to 23 Pa.C.S.A. [§] 2511(b) without clear and convincing evidence that there is no parental bond between [M]other and [the C]hildren, and that termination would serve the best interest of the [C]hildren.

5. Whether the trial court erred by changing the permanency goals to adoption pursuant to 42 Pa.C.S.A. [§] 6351 without clear and convincing evidence that adoption is in the [C]hildren's best interest.

6. Whether the trial court erred by changing the permanency goals to adoption pursuant to 42 Pa.C.S.A. [§] 6351 without clear and convincing evidence that reasonable efforts were made by [DHS] to reunify the [C]hildren with [Mother].

7. Whether the trial court erred by changing the permanency goals to adoption in contravention [to] the mandate of 42 Pa.C.S.A. [§] 6302 to preserve the unity of the family whenever possible.

Mother's Brief at 8.[8]

Our standard of review is for an error of law or abuse of discretion: "Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion." **In re Adoption of L.A.K.**, 265 A.3d

_____

[8] We note, with disapproval, that neither the Children's GAL nor their legal counsel participated in the instant appeal. We note that both advocated for termination of Mother's parental rights at the conclusion of the hearing. **See** N.T., 8/2/24, at 181-84.

580, 591 (Pa. 2021).[9]  Thus, we must consider whether the trial court's order is supported by competent evidence.  ***See In re Adoption of C.M.***, 255 A.3d 343, 358 (Pa. 2021).  Appellate courts must accept the trial court's findings of fact and credibility determinations if they are supported by the record.  ***See Interest of S.K.L.R.***, 256 A.3d 1108, 1123 (Pa. 2021).

Pennsylvania's Adoption Act ("the Act") governs involuntary termination of parental rights proceedings.  ***See*** 23 Pa.C.S.A. §§ 2101-2938.  Subsection 2511(a) provides grounds for the involuntary termination of parental rights. If the trial court finds clear and convincing evidence supporting the existence of one of the grounds for termination set forth in subsection (a), the court must then consider whether termination would best serve the child under subsection (b).  ***See id***. § 2511(b).  This Court need only agree with one of the grounds set forth in subsection (a) to affirm, provided subsection 2511(b) is also satisfied.  ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).  For this reason, our review centers on section 2511(a)(2) and (b), which provide as follows:

---

[9] "An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion," or "the facts could support an opposite result."  ***In re Adoption of S.P.***, 47 A.3d 817, 826 (Pa. 2012). Instead, an appellate court may reverse for an abuse of discretion "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." ***Id.***  This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.  ***See Interest of S.K.L.R.***, 256 A.3d at 1123-24.

**(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. . . ..

23 Pa.C.S.A. § 2511(a)(2), (b).

The grounds for termination under section 2511(a)(2) due to parental incapacity are not limited to affirmative misconduct; those grounds may include acts of refusal and incapacity to perform parental duties. *See In re S.C.*, 247 A.3d 1097, 1104 (Pa. Super. 2021), *abrogated on other grounds by Interest of K.T.*, 296 A.3d 1085, 1110 n.23 (Pa. 2023). We have long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *See In re Adoption of M.A.B.*, 166 A.3d 434, 443 (Pa. Super. 2017). The trial court may properly reject as untimely or disingenuous a parent's vow to follow through on necessary services when the parent failed to cooperate with the

agency or take advantage of available services during the dependency proceedings. *See In re S.C.*, 247 A.3d at 1105.

Mother contends that the trial court erred by terminating her parental rights pursuant to section 2511(a)(2). *See* Mother's Brief at 11. Specifically, Mother argues the Agency failed to establish the existence of a repeated and continued incapacity, abuse, neglect, or refusal that could not or would not be remedied. *See id*. at 15. She asserts that DHS acknowledged she had completed her drug and alcohol objective, and therefore her only outstanding objective was her mental health treatment. *See id*.

With respect to section 2511(a)(2), the trial court found that Mother had "not made the necessary efforts to remedy the causes of [her] incapacity, abuse, neglect, or refusal to care for the Children." Trial Ct. Op., 9/6/24 (unnumbered at 2). Specifically, the court opined that Mother's incapacity, neglect, or refusal due to her drug addiction and mental health concerns were not, and could not, be remedied. *See* N.T., 8/2/24, at 189-94. The court found credible the testimony of Ms. Banks and Parental Aunt, while deeming Mother's testimony not credible. *See id*. at 189, 191.

Following our review, we conclude the trial court's findings are supported by competent evidence. Ms. Banks's overall testimony establishes that Mother's claim that she had fully addressed her drug addiction is inaccurate. Specifically, Ms. Banks stated that the NET certificate, alone, did not satisfy the objective as Mother was required to also provide treatment

plans and progress notes. *See id*. at 140, 142-43. Ms. Banks explained that this information was indispensable, and its absence prevented CUA from assessing what was explicitly involved in the NET program, including its length, requirements for completion, Mother's diagnoses, and her attendance record. *See id*. at 78-79, 142. As such, Ms. Banks averred that CUA received no evidence that Mother made any appreciable progress in overcoming her drug addiction through the NET drug and alcohol program she completed. *See id*. at 78-79, 102, 129, 134, 140, 142-43. Further compounding these concerns about Mother's continued drug addiction were her positive test results and lack of compliance with her drug screening objective. Mother recurrently tested positive for cocaine in September 2022, December 2022, June 2023, July 2023, and December 2023. *See id*. at 87-88, 90-91, 138. Ms. Banks testified that missed screens are considered positives, and that Mother missed screens in April 2024 and May 2024. *See id*. at 82, 150.

Similarly, Mother's failure to address her mental health treatment mirrors the issues with her drug treatment objective. Ms. Banks testified that Mother failed to provide documentation related to her mental health treatment, despite being repeatedly ordered to provide treatment plans and progress notes. *See id*. at 116-17, 119, 128, 134.

Based upon the foregoing, the record amply supports the trial court's conclusion that repeated and continued incapacities, neglect, or refusal of Mother to comply and progress in her drug and mental health treatment goals

had caused the Children to be without the essential parental care, control, or subsistence necessary for their physical or mental well-being. *See In re Adoption of A.H.*, 247 A.3d 439, 443 (Pa. Super. 2021); 23 Pa.C.S.A. § 2511(a)(2). Further, the record confirms that the conditions and causes of Mother's incapacities, neglect, or refusal cannot or will not be remedied. *See id*. Mother's conduct clearly evidences a lack of diligent efforts towards the reasonably prompt assumption of parental duties. *See In re M.A.B.*, 166 A.3d at 443. Therefore, we discern no error or abuse of discretion by the court in terminating Mother's parental rights pursuant to section 2511(a)(2).

We turn next to Mother's challenge to section 2511(b). Section 2511(b) requires that the court "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b); *see also In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). Our Supreme Court has elaborated:

> . . . [T]he child's emotional needs and welfare include intangibles such as love, comfort, security, and stability. As further guidance, we have identified factors, *i.e.*, specific needs and aspects of the child's welfare, that trial courts must always consider. The court must consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents. And, if the child has any bond with the biological parent, the court must conduct an analysis of that bond, which is not always an easy task.

*Interest of K.T.*, 296 A.3d at 1106 (internal citations, quotations, and footnotes omitted). Bond, permanency, stability, and all other intangibles are "all of 'primary' importance in the [s]ection 2511(b) analysis." *Id*. at 1109. In considering the affection which a child may have for his or her natural

- 17 -

parents, this Court has stated that the affection a child harbors for parents does not necessarily constitute a bond, nor is a biological connection sufficient to establish that a bond exists. *See In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008). Further, this Court has clarified that it is "within the discretion of the [trial] court to prioritize the safety and security" of children "over their bonds with their parents." *Interest of M.E.*, 283 A.3d 820, 839 (Pa. Super. 2022). Thus, we will not disturb such an assessment if the trial court's factual findings are supported by the record. *See id*.

Mother argues that the trial court erred by terminating her parental rights pursuant to this subsection (b). She contends, she has "strong emotional bonds" with the Children because she was their caregiver during the "formative period" of their lives. Mother's Brief at 11, 17-18. Mother asserts that she maintained these bonds through her consistent communication and participation in visitations she alleged were unsupervised with the Children. *See id*. She argues that the record is devoid of evidence to establish termination would serve the best interests of the Children, and, instead, termination would cause the Children irreparable, severe emotional harm. *See id*.

The trial court found that "there is no parent-child bond between Mother and the [C]hildren." Trial Ct. Op., 9/6/24 (unnumbered at 2). The court explained:

> They don't look to [Mother] to meet any of their needs. They look
> to her as someone they know. And I believe someone they love.

- 18 -

But this is not a parent/child type of relationship. They know who [Mother] is. But they look to [Paternal Aunt] to meet all of the needs that a parent provides to a child in this case, not [Mother]. And I find that they will suffer no irreparable harm if Mother's rights terminated.

N.T., 8/2/24, at 197.

Our review discloses that the evidence supports the trial court's findings. There is no doubt that the Children love Mother and have satisfactory interactions during their contact, but that is not sufficient to find a necessary and beneficial bond between parents and children. *See K.K.R.-S.*, 958 A.2d at 535 (evidence of a child's affection for a parent is not sufficient to conclude a beneficial bond exists). Indeed, the foregoing credible evidence is clear that the Children do not share a necessary and beneficial bond with Mother and would not suffer extreme emotional consequences from termination. *See K.T.*, 296 A.3d at 1109-10.[10] Based upon the testimonial evidence set forth above, we discern no error or abuse of discretion in the trial court's conclusion that DHS met its evidentiary burden pursuant to section 2511(b).

_____

[10] We note the trial court also correctly considered the Children's need for permanency. *See* N.T., 8/2/24, at 194-95. Ms. Banks testified that the Children are requesting permanency. *See id.* at 136. Indeed, the Children's childhoods are passing, and the court was well within its discretion to place primary importance on their need for permanency, which the record confirms Paternal Aunt will provide. *See K.T.*, 296 A.3d at 1106; *Interest of M.E.*, 283 A.3d at 839; *In re T.S.M.*, 71 A.3d at 269 ("[C]ourts must keep the ticking clock of childhood ever in mind. Children are young for a scant number of years, and we have an obligation to see to their healthy development quickly").

We now turn to Mother's fifth, sixth, and seventh issues, wherein she challenges the sufficiency of the evidence to change the Children's permanency goals from reunification to adoption. *See* Mother's Brief at 11. Given our disposition concerning termination, Mother's remaining issues concerning her appeals from the goal change orders are moot. *See Interest of A.M.*, 256 A.3d 1263, 1272-73 (Pa. Super. 2021) (finding issues regarding goal change moot in light of affirming the termination of parental rights); *see also In re Adoption of A.H.*, 247 A.3d 439, 446 (Pa. Super. 2021) (holding that "the effect of our decision to affirm the orphans' court's termination decree necessarily renders moot the dependency court's decision to change Child's goal to adoption"); *In re D.K.W.*, 415 A.2d 69, 73 (Pa. 1980) (stating that once parental rights are terminated, issues of custody and dependency are moot). Therefore, we do not review these issues.

In sum, we affirm the decrees involuntarily terminating Mother's parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(2) and (b). We also dismiss as moot the appeals from the orders changing the Children's permanency goals from reunification to adoption.

Decrees affirmed. Appeals from goal change orders dismissed.

Judge Dubow did not participate in the consideration or decision of this case.

Judge King joins this memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/20/2025