J-S09014-25
J-S09015-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.E., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: C.E., MOTHER | : | |
| | : | |
| | : | No. 2938 EDA 2024 |

Appeal from the Order Entered October 9, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000246-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: M.J.E., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: C.E., MOTHER | : | |
| | : | |
| | : | No. 2939 EDA 2024 |

Appeal from the Decree Entered October 9, 2024
In the Court of Common Pleas of Philadelphia County Juvenile
Division at No(s): CP-51-AP-0000234-2024

BEFORE:   LAZARUS, P.J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, P.J.:                    **FILED MAY 14, 2025**

C.E. (Mother) appeals from the decree and order, entered in the Court of Common Pleas of Philadelphia County, Juvenile Division, involuntarily terminating her parental rights to her minor child, M.E. (Child) (born August

_____

[*] Former Justice specially assigned to the Superior Court.

2018) and changing the permanency goal to adoption.[1]  After careful review, we affirm.[2]

On March 2, 2022, after Mother's arrest and detention for attempted burglary, terroristic threats, contempt of court for violating an order, and related offenses, Child began residing with her maternal aunt,[3] S.F., with a Safety Plan in place.  On April 4, 2022, after an adjudicatory hearing, the court deferred adjudication, ordered that Child's dependency petition remain open, and ordered the City of Philadelphia Department of Human Services (DHS) to obtain an Order of Protective Custody (OPC), which DHS obtained on the same day.  On April 6, 2022, at a shelter care hearing, the court lifted the OPC, left in place Child's temporary commitment to DHS, and ordered supervised visitation for Mother upon her release from custody.  On June 21, 2022, Child was adjudicated dependent and committed to DHS custody.

DHS and the Community Umbrella Agency (CUA) created a case plan for reunification, requiring Mother to:  (1) complete a home assessment and allow ongoing CUA access to the home, (2) participate in court-ordered drug screenings, (3) complete court-ordered visitations, (4) participate in Child's

---

[1] Mother has also filed a goal change appeal at 2939 EDA 2024.  We have *sua sponte* consolidated that appeal with the instant appeal as both appeals involve the same parties and raise the same issues.  **See** Pa.R.A.P. 513.

[2] The parental rights of Child's father, S.W.F., were involuntarily terminated in July 2024.  S.W.F. is not a party to this appeal.

[3] Although the parties referred to S.F. as maternal aunt throughout the proceedings, S.F. is actually Mother's Godsister.  **See** N.T. Termination Hearing, 10/9/24, at 49.

medical and dental services, (5) provide proof of employment, and (6) engage in monthly individualized therapy. *See* N.T. Termination Hearing, 10/9/24, at 15. At a September 21, 2022 permanency review hearing, Mother was found to be minimally compliant with the permanency plan. The court found that Mother had not complied with mental health counseling or domestic violence counseling, but had completed anger management and attended four out of eight supervised visits. On December 14, 2022, Mother was found substantially compliant with the permanency plan and received bimonthly supervised visits. Child was placed in kinship care with another maternal aunt, A.E.

On March 15, 2023, Mother was found moderately compliant and given biweekly supervised visitation with Child. On April 27, 2023, and June 22, 2023, Mother was again found moderately compliant. On February 28, 2024, Mother's compliance was downgraded to "minimal."[4] At the time of the termination hearing, Child was residing with her maternal grandmother and maternal cousin after the court vacated A.E.'s temporary legal custody. Child was subsequently placed back in kinship care with S.F., who is also Child's resource parent.[5]

_____

[4] Mother did not progress beyond minimal compliance for the remainder of the permanency period.

[5] Child was placed with S.F. in March 2024. *See* N.T. Termination Hearing, 10/9/24, at 14.

- 3 -

On July 5, 2024, after Child had been in DHS' custody for 27 months, DHS filed a petition to change Child's permanency goal from reunification to adoption and to involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act.[6] On September 9, 2024, Child's guardian *ad litem* (GAL) petitioned the court requesting appointment of termination of parental rights (TPR) counsel. On September 11, 2024, the court ordered the appointment of TPR counsel.

The trial court held a termination hearing on October 9, 2024. Mother did not attend the hearing or offer evidence. DHS presented the testimony of Latavia Thomas, the CUA case manager assigned to the case since January 2024, and S.F., the resource parent. Thomas testified at the termination hearing that the biggest barrier to reunification with Child was that Mother did not complete any of the required drug screenings during the life of the case, which created safety concerns because Mother's drug of choice was PCP.[7] ***See*** N.T. Termination Hearing, 10/9/24, at 18, 29. Thomas also testified that Mother was inconsistent with attending supervised visits and often missed visits for months at a time. ***Id.*** at 17. S.F. testified that she was ready to adopt Child, but had doubts about how Mother would react to Child's adoption. ***Id.*** at 70. S.F. testified that if she adopted Child, she would allow Child and

---

[6] 23 Pa.C.S.A. §§ 2101-2938.

[7] Thomas testified that S.F. had provided Thomas text messages where Mother admitted to using PCP; the messages were uploaded to DHS' case management system. ***See*** N.T. Termination Hearing, 10/9/24, at 46.

Mother to continue to maintain a relationship. *Id.* Child's TPR counsel informed the court that she had met with Child before the hearing and ascertained that Child understood what adoption would entail, that Child felt happy in her foster home, and that Child wanted to be adopted by S.F. *Id.* at 80.

The trial court granted DHS's petition to terminate Mother's parental rights, pursuant to subsections 2511(a)(1), (2), (5), (8) and (b), concluding that Mother had refused or failed to perform parental duties, failed to address her case plan objectives, and that termination was in Child's best interests. Mother filed a timely notice of appeal and Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

On appeal, Mother raises the following issues for our consideration:

(1) Whether the trial court erred in finding that termination of parental rights was in the best interest of the child under 23 Pa.C.S.[A.] § 2511(b), as the evidence indicates a significant emotional bond between Mother and [C]hild, and whether this bond was given the appropriate weight by the trial [court]?

(2) Whether [C]hild's wishes were adequately ascertained by [TPR counsel], who met with the child only once, on the Saturday before the termination hearing, and failed to engage in sufficient visitation over time to assess [C]hild's evolving desires? Was [C]hild's ambivalence about adoption, as reported by DHS/CUA, fully explored, impacting the fairness of the termination decision?

(3) Whether the trial court failed to consider adequately the adoptive parent's assurance to retain custody of [C]hild regardless of the court's decision to terminate parental rights, undermining the necessity of termination in achieving stability for [C]hild?

(4) Was the trial court's ruling changing the goal to adoption supported by clear and convincing evidence?

Appellant's Brief, at 7 (reordered for ease of review).

In reviewing an appeal from a decree terminating parental rights, we adhere to the following standard:

> In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty[,] and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue. It is well[-]established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence[,] in light of the totality of the circumstances[,] clearly warrants termination.

*In re Adoption of S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citation and quotation marks omitted); *see also In the Int. of K.T.*, 296 A.3d 1085 (Pa. 2023) (section 2511 requires bifurcated analysis where party seeking termination of parental rights first bears burden of proving, by clear and convincing evidence, grounds for termination under subsection 2511(a) exist before moving on to determine whether termination meets needs and welfare of child set under subsection 2511(b)). We review a trial court's decision to involuntarily terminate parental rights for an abuse of discretion or error of law. *In re A.R.*, 837 A.2d 560, 563 (Pa. Super. 2003). Our scope of review is limited to determining whether the trial court's order is supported by competent evidence. *Id.*

- 6 -

Mother first argues that the court erred in terminating her parental rights under subsection 2511(b),[8] where the resource parent acknowledged the existence of a "close bond" between Mother and child and "the CUA worker stated that there is a parent[-]child bond . . . [and] that the bond with [M]other is beneficial to [C]hild."  Appellant's Brief, at 16-17.

In *In re T.S.M.*, 71 A.3d 251 (Pa. 2013), our Supreme Court noted that "if the grounds for termination under subsection (a) are met,[9] a court 'shall give primary consideration to the developmental, physical[,] and emotional needs and welfare of the child.'"  *Id.* at 267, citing 23 Pa.C.S.A. § 2511(b).  Moreover, "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into [the] needs and welfare of a child."  *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005).  Further, in *In re E.M.*, 620 A.2d

---

[8] Subsection 2511(b) states:

> **(a)   Other considerations.** -- The court in terminating the rights of a parent shall give primary consideration to the developmental, physical[,] and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing[,] and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection[s] (a)(1), (6)[,] or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

[9] On appeal, Mother does not raise an issue regarding the court's termination of her parental rights to Child under subsection 2511(a).

481 (Pa. 1993), our Supreme Court held that the determination of the child's "needs and welfare" requires an examination of "the status of the natural parental bond[.]" *Id.* at 484. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012), *overruled on other grounds by In re Adoption of L.B.M.*, 161 A.3d 172 (Pa. 2017).

With regard to the parent-child bond, Thomas testified that, while Child "would [] be a little sad" if Mother's rights were terminated, Child would not suffer irreparable harm. N.T. Termination Hearing, 10/9/24, at 20-21. Thomas also testified that, while there was a bond between Child and Mother "to some degree" because Child knows her Mother and visits with her, Child ultimately has a "sense of family with [S.F.] and her [] children[,]" and "she's not used to being with her mom [and] living with her on a permanent basis." *Id.* at 50-53. Thomas also stated that reunification had been ruled out because of Mother's refusal to complete a drug screen and concerns about her mental health. *Id.* at 20. S.F. testified that Mother and Child are close, but that Mother would need to "change the way she live[d] and really get herself together" to be a "good mom to [Child.]" *Id.* at 72.

Under a subsection 2511(b) analysis, a court must assess "[w]hether [a parent-child] bond exists to such a considerable extent that severing the natural parent-child relationship would be contrary to the needs and welfare of the child[.]" *In re K.Z.*, 946 A.2d 753, 763 (Pa. Super. 2008). Moreover,

> [i]n addition to a bond examination, the court can equally emphasize the safety needs of the child under subsection (b), particularly in cases involving physical or sexual abuse, severe child neglect or abandonment, or children with special needs. The trial court should also examine the intangibles such as the love, comfort, security, and stability the child might have with the foster parent. Another consideration is the importance of continuity of relationships to the child and whether the parent-child bond, if it exists, can be severed without detrimental effects on the child. All of these factors can contribute to the inquiry about the needs and welfare of the child.

*Id.* It is within the province of the trial court to "consider the totality of the circumstances when performing a needs and welfare analysis." *Interest of M.E.*, 283 A.3d 820, 839 (Pa. Super. 2022). Moreover, this Court has clarified that it is "within the discretion of the [trial] court to prioritize the safety and security" of children "over their bonds with their parents." *Id.* We will not disturb such an assessment if the trial court's factual findings are supported by the record. *See id.*

Here, the trial court correctly emphasized Child's bond with the resource parent and the comfort and security this bond provided when it concluded terminating Mother's parental rights under subsection 2511(b) was proper. While we acknowledge the fact that Mother and Child may have a relationship, this relationship is not necessarily a healthy one, considering the testimony presented by Thomas as to Mother's ongoing addiction to PCP, inconsistent visitation, and noncompliance with other reunification objectives. In contrast, there is ample evidence that the resource parent has provided a safe and stable home for Child and that Child is happy living with S.F.'s family. Based on the record evidence, we conclude that, while some bond between Mother

and Child exists, this bond is not so considerable that severing it would be contrary to the needs and welfare of Child. *See In re K.Z.*, 946 A.2d at 763.

Mother next argues that the trial court erred in terminating her parental rights because TPR counsel only met with Child once before the hearing, failed to meaningfully cross-examine Thomas and S.F., and objected to Child being called as a witness. *See* N.T. Termination Hearing, 10/9/24, at 19-20. While Mother appears to object to certain conduct by Child's TPR counsel, this claim is better characterized as a veiled challenge to the sufficiency of the evidence supporting the trial court's termination of parental rights, and specifically its finding that termination was in the Child's best interest. *Id.*

This argument fails to merit relief. Here, the interests of the Child were represented by separate TPR counsel, appointed at the request of the GAL. *See In re Adoption of L.B.M.*, 161 A.3d 172, 182 (Pa. 2017) (discussing that appointing separate counsel for the child in termination proceedings alleviates concerns stemming from the "primacy of children's welfare, the fundamental nature of the parent-child relationship[,] and the permanency of termination"). TPR counsel relayed to the court that Child is "happy in her foster home[,]" and expressed that she wants to be adopted by S.F. N.T. Termination Hearing, 10/9/24, at 80. We decline to reverse the trial court based on Mother's challenges to counsel's cross-examination strategy or the timing of counsel's meeting with Child because "significant deference must be accorded to counsel's approach in discerning a child's preferences and the child's articulation thereof." *In re P.G.F.*, 247 A.3d 955, 966 (Pa. 2021). The

- 10 -

trial court, after evaluating the totality of the circumstances, appropriately concluded that while Child "has a relationship" with Mother, it is not a "healthy relationship[,]" and the court heard no evidence that "there would be a detrimental impact" if Mother's rights are terminated. N.T. Termination Hearing, 10/9/24, at 91. We will not disturb such an assessment as these factual findings are supported by the record, including TPR counsel's evaluation of Child's preferences. *See Interest of M.E.*, 283 A.3d at 839.

Mother's third issue, from what we can discern, is that termination was not necessary to achieve stability for Child because the adoptive parent was sure to retain custody of Child regardless of the court's decision to terminate parental rights. *See* Appellant's Brief, at 7. Beyond mere inclusion in the statement of questions presented, this argument is not developed anywhere in Mother's brief. Pursuant to the Pennsylvania Rules of Appellate Procedure, the argument in Appellant's brief is required to be divided into separate sections for each question presented. *See* Pa.R.A.P. 2119(a). This claim is also unsupported by any citations to the record or to relevant case law. *See* Pa.R.A.P. 2119(b)-(c) (requiring citation to legal authority and reference to the record in appellate briefs); *Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) (explaining appellant must "present arguments that are sufficiently developed for our review. . . . This Court will not act as counsel

and will not develop arguments on behalf of an appellant.").[10]  As a result, we are constrained to find this issue waived.

Mother's final issue challenging the goal change petition is similarly undeveloped in her brief.  Regardless, because we affirm the termination decree, Mother's appeal from the goal change order is moot.  ***See Int. of A.M.***, 256 A.3d 1263, 1272-73 (Pa. Super. 2021) (finding issues regarding goal change moot in light of termination of parental rights); ***see also In re D.K.W.***, 415 A.2d 69, 73 (Pa. 1980) (stating once parental rights terminated, issues of custody and dependency under Juvenile Act moot).

Decree and order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/14/2025

---

[10] Even if this issue were not waived, it would garner no relief.  Based on our review of the record, we believe that Mother may be referring to a request made by her counsel to change the goal to Permanent Legal Custody (PLC), rather than adoption, which the court declined to do.  ***See*** N.T. Termination Hearing, 10/9/24, at 40-44.  Because DHS only sought a goal change to adoption, any such discussion of PLC as a permanency goal was not before the court.  ***See*** 42 Pa.C.S.A. § 6351(f.1)(3).

- 12 -